SECOND NATIONAL BANK OF ST. PAUL *vs.* JAMES HOWE and another.

April 24, 1889.

**Accommodation Note—Right of Maker to Withdraw before Negotiation.**—An accommodation note has no validity until it has passed into the hands of a third party for value. Until it has been so negotiated, the maker can withdraw from and rescind his engagement upon it.

**Bank—Notice to Officer.**—Notice to an active managing officer of an incorporated bank, given during banking hours at the usual place of business, is notice to the bank.

**Same—Liability for Fraudulent Representation of Officer.**—If, then, upon receiving adequate notice from the maker of the accommodation

note that he rescinds and revokes the act, said officer falsely and fraudulently makes statements in reference to the solvency and financial standing of such payee, of a character calculated to and which actually mislead the maker, and induce him to withdraw his previous revocation and rescission of the contract, and to consent to the negotiation of the note to the bank, the latter can be held responsible for the consequences in case it subsequently receives the note from the payee; and it is not material that at the time of the notice, and when the false and fraudulent statements were made, the bank was not interested in or connected with the note.

Action on a promissory note for $4,000, signed by defendants, payable to the order of Clarence M. McLain, and by him indorsed. Defence that the defendants were mere accommodation makers, and the fraudulent representations of plaintiff's vice-president stated in the opinion. Trial in the district court for Ramsey county, before *Baxter*, J., (acting for a judge of the 2d district,) who directed a verdict for plaintiff. The defendants appeal from an order refusing a new trial.

*Warner & Lawrence*, for appellants.

*C. D. & Thos. D. O'Brien*, for respondent.

COLLINS, J. The plaintiff in this action is a corporation engaged in the banking business in the city of St. Paul, while the defendants are dealing in dry goods at the same place. The testimony which we are required to consider tends to establish that the note upon which the action is brought was given the evening before its date, as accommodation paper, to one McLain, to be discounted by him at the plaintiff bank the next day; that it was signed in the firm name by William Howe, one of the defendants, without the knowledge or consent of James Howe, his partner; that, upon being informed of the transaction, James promptly objected to the use of the firm name for McLain's benefit, and, at the opening of the bank next morning, was upon hand to notify its officers that the firm rescinded the engagement evidenced by the note. To the vice-president of the corporation, who was one of its managing officers, Howe stated that his firm was not indebted to McLain; that the note was given for accommodation solely; that the firm did not want it to go into the bank; that the firm would not be responsible for McLain's debt; and

other matters of like import. It is quite clear, from the language used by Howe, that it amounted to notice that his firm revoked the act, but it nowhere appears that the bank was notified that the use of the firm name by one of the partners was repudiated by the other because it was unauthorized, and not within the scope of the partner-ship business, or otherwise. The testimony also indicates that the officer to whom this language was addressed assumed to know Mc-Lain's financial standing, assuring Howe that he need not be afraid of him, and that he was rich and responsible. Whereupon, and solely upon the strength of these assurances, Howe modified his re-scission and revocation by authorizing the bank to take the paper if the vice-president knew McLain to be responsible. He left the bank with an injunction upon one of its managers not to take the note un-less he knew its payee to be good, and immediately thereafter the note was presented by that person and discounted by the bank. Be-cause of the position taken by the court at this point in the trial, no more witnesses were called by the defendants, but they offered to show that at the time of the conversation McLain was insolvent and in a failing condition,—all of which was well known by the officer with whom the conversation was had; and that the defendants were wholly ignorant of the facts in regard to his pecuniary condition. Upon objection being made to this by the plaintiff, the objection was sustained, and a verdict ordered against defendants; the court hold-ing that the testimony already in and that which was tendered did not constitute a defence. In this we are of the opinion that the learned court erred, and that a new trial must be had.

This was accommodation paper, and had no validity until it was discounted or had passed into the hands of a holder for value. As between the makers and McLain it was not binding, nor did it be-come an obligation of the defendants until negotiated. *Tufts* v. *Shep-herd,* 49 Me. 312; *Macy* v. *Kendall,* 33 Mo. 164; *Smith* v. *Wyckoff,* 3 Sandf. Ch. 77. And until negotiated the defendants could withdraw from and rescind their engagement upon it. 1 Daniel, Neg. Inst. § 191; *Downs* v. *Richardson,* 5 Barn. & Ald. 674; *Whitworth* v. *Adams,* 5 Rand. (Va.) 333, 342; 2 Am. & Eng. Cyclop. Law, 365, and cases cited. The accommodation contract being revocable, and notice of the mak-

er's withdrawal and rescission having been given to an officer of the bank before its presentation, the inquiry is as to the effect of this notice, and the legal bearing which the alleged statements and misrepresentations of the officer may have upon the situation.

This corporation must necessarily act through its representative officers,—those to whom is intrusted the conduct of its business affairs. It is immaterial what the official position may be, if the person is actively engaged in the management of its interests. It appears from the testimony that the officer with whom Howe had the conversation was one of the prominent managers of the plaintiff bank, and actively engaged in its daily business. It must follow that his knowledge of McLain's insolvent and failing condition must be imputed to and was that of the bank, and that notice to him in regard to a business matter pertaining to the institution was adequate notice to it. It is impossible to distinguish or discriminate between the information which he possesses or the acts which he performs as an officer and as an individual, in any matters relating to the business he is controlling. The bank had notice, according to the testimony, of the nature before stated. If, then, the officer referred to made false and fraudulent assertions respecting McLain's solvency and financial standing to Mr. Howe, which were of a character calculated to and which actually did mislead and induce him to withdraw his previous revocation and rescission of the accommodation contract and consent to its negotiation, the plaintiff bank cannot escape the consequences, and the issues presented by the testimony should have been passed upon by the jury.

It is not material, as seems to have been thought by the trial court, that the plaintiff should have been interested in or connected with the note at the time of the conversation. As the defendants' right to withdraw was absolute up to the moment the paper was negotiated and had passed into the hands of a third party for value, notice of revocation and rescission served upon that party is all that can be required. This notice was given, but was ineffectual, for the reasons before mentioned.

We think we have already indicated that the court was right in sustaining the objection made to the testimony relating to Mr. Ber-

key's knowledge of McLain's embarrassed circumstances, and what he said about it. Mr. B. was a director only in the bank. It is not shown that he had any part in the management or a voice in the direction of its affairs. He did not speak for or represent it any more than any other stockholder, and in this respect he is unlike the officer alluded to, with whom Howe communicated.

Order reversed.