W. D. Fox *v.* W. O. Cortner *et al.*

(*Nashville.* December Term, 1921.)

1. **BILLS AND NOTES.** Accommodation maker could prove recall of signature under plea of non est factum.

   In action on note, accommodation maker could defend on ground that he recalled his signature before the note was accepted in due course under a plea of *non est factum.* (*Post, pp.* 488-491.)

Case cited and approved: Johl v. Fernberger, 57 Tenn., 37.

Cases cited and distinguished: State v. Roberts, 30 Tenn., 541; Furnish v. Burge, 101 Tenn., 538.

2. **BILLS AND NOTES.** Accommodation party may revoke signature before note taken by holder for value.

   The rule that an accommodation party, at any time before the note is negotiated and value given for it, may revoke his indorsement, is not changed by Thompson-Shannon Code, section 3516a28. (*Post, pp.* 491-493.)

Cases cited and approved: Downs v. Richardson, 5 Barnwell & Alderson, 674; Dogan v. Dubois, 2 Richardson's Eq. R., 85; Marvin v. McCollum, 20 Johns. R., 288; Skelding v. Warren, 15 Johns. R., 272; Cox v. Troy, 5 Barn. & Ald., 474.

Case cited and distinguished: Bank v. Johnson, 31 Tenn., 217.

Code cited and construed: Sec. 3516a28 (T.-S.).

3. **BILLS AND NOTES.** Letter written by accommodation maker's attorney held to revoke signature.

   Where payee, on receipt of new note in settlement of original note to which he had objected because signatures of accommodation maker and indorser had been forged, wrote person whose signature appeared on new note as accommodation maker to inquire as to genuineness of signature, a letter written by such person's attorney in response to inquiry stating that the signature

Fox v. Cortner.

was a forgery, and threatening to prosecute persons who forged signature, *held* to revoke accommodation maker's signature if he had in fact signed note. (*Post, p.* 493.)

4 **BILLS AND NOTES.** Revocation of accommodation maker's signature accomplished either by erasure or notification.

A revocation of accommodation maker's signature is accomplished either by erasing the signature or by notifying those interested that the party revoking does not desire or intend to be bound by his signature. (*Post, pp.* 493, 494.)

Cases cited and approved: Teague First State Bank v. Hare, 152 S. W., 501; Second Nat. Bank v. Howe, 40 Minn., 390; Dogan v. Dubois, 2 Rich. Eq., 85; May v. Boisseau, 35 Va., 164.

Code cited and construed: Sec. 3516a57 (T.-S.).

5. **BILLS AND NOTES.** Accommodation maker could not recall signature by notice to transferee of holder in due course, where transferee had knowledge of, but was not party to, fraud.

Accommodation maker could not recall signature by notice of revocation to transferee of holder·in due course with good title, not himself a party to any fraud or illegality affecting the note, though he took the note with knowledge of fraud by which accommodation maker's signature was obtained; the transferee having all the rights of such holder in due course under Thompson-Shannon Code, section 3516a57. (*Post, pp.* 494-497.)

6 **BILLS AND NOTES.** Payee of note never in possession thereof not holder ''in due course.''

Under Thompson-Shannon Code, sections 3516a29, 3516a189(7), payee of note, who was never in possession of it or the bearer of it, was not a holder in due course within section 3516a57, providing that ·a holder who derives his title through a holder in due course, and who is not himself a party to any fraud or illegality affecting the instrument, has all the rights of such former holder in respect of prior parties. (*Post, pp.* 494-497.)

Case cited and approved: Bank v. Bank, 115 Tenn., 64.

Fox v. Cortner.

Case cited and distinguished: Bank v. Chatfield, 118 Tenn., 481.

Code cited and construed: Secs. 3516a29, 3516a189(7); 3516a58.

7. **BILLS AND NOTES.** Indorsee seeking to avoid revocation of accommodation maker's signature required to prove indorser a holder in due course.

Under Thompson-Shannon Code, section 3516a58, providing that where it is shown that the title of any person who has negotiated the instrument is defective, the burden is on the holder to prove that he or "some person under whom he claims" acquired title as holder in due course, where it appeared that the maker obtained accommodation maker's signature to note by fraud, an indorsee, to avoid accommodation maker's revocation of signature by notice to him on the ground, under section 3516a57, that he derived his title through a holder in due course, was required to show his indorser was a holder in due course. (*Post, pp.* 497, 498.)

Case cited and approved: In re Hopper-Morgan Co., 156 Fed., 525.

---

FROM MARSHALL.

---

Appeal from the Chancery Court of Marshall County.— Hon. Thos. B. Lytle, Judge.

R. C. Armstrong, for plaintiff.

Thos. N. Greer, for defendants.

Mr. Justice Green delivered the opinion of the Court.

The bill in this case was filed by complainant, Fox, to recover on a note for $2,000, of which he was the holder. The note appears to have been signed by W. O. Cortner and J. T. Wood as makers, and by W. S. Coffey as surety.

It was payable to W. C. Thomas, and indorsed in blank by said Thomas. The makers, the surety, and the indorser were all sued.

The chancellor rendered a decree in favor of the complainant against Cortner, Coffey, and Thomas, but dismissed the bill as to Wood from which decree the complainant has appealed. The defendants against whom the decree was rendered did not appeal, and the case in this court involves the liability of Wood alone.

Wood filed an answer to the bill and also a plea of *non est factum*. Subsequently, over the exception of the complainant, Wood was permitted to file an amended answer.

The defenses made in behalf of Wood are: (1) That he did not execute the note; (2) that if he did, he was intoxicated at the time; and (3) that in any event he recalled or revoked his signature before the note was accepted in due course, which as an accommodation maker he insists he had the right to do.

The chancellor found that Wood did execute the note, and that he was not so intoxicated at the time of its execution as to relieve him of liability, but the chancellor was of opinion that Wood's defense of revocation was good.

The case has been ably briefed and argued, and we have given it that investigation which its thorough preparation merits. We have reached the conclusion that the chancellor's decree was correct, and was well grounded. It will not be necessary, therefore, to discuss the first two defenses made by Wood. It may be conceded, as contended by complainant, that Wood did execute the note, and that he was not then so intoxicated as he claims. In considering the assignments of error to the chancellor's decree, a statement of some of the facts of the case is required.

All the parties are farmers residing in Marshall and Bedford counties, except the complainant Fox, who is president of a bank at Lewisburg.

In the spring of 1920, Thomas brought to Fox's bank in Lewisburg a note for $2,093, payable to the order of Thomas, and indorsed by him and signed by Cortner, Wood, and Coffey. This note was given to Thomas by Cortner for some sheep the latter had bought from Thomas. Thomas borrowed some money from Fox's bank, and put the note up as collateral. Later, by an arrangment between Thomas and Fox, Fox bought the note from Thomas for $2,050. The debt of Thomas to the bank was paid off, and Thomas was given credit at the bank for the balance of the proceeds.

This original note was due in September, 1920. Fox was told that Cortner would probably want to pay off the note before it was due, when he sold the sheep. Fox did not know Cortner at that time, but did know Wood, and during the summer of 1920 wrote to Wood to get word to Cortner that he (Fox) held the note, and that it might be paid at any time and interest stopped. It seems that reference must have been made in this communication of Fox's to the fact that Wood was on the note, for after getting this letter Wood came to Lewisburg in company with his lawyer, Mr. Nance. They called to see Fox about the note, and Wood denied his signature thereto, and pronounced the signature a forgery. Fox examined copies of Wood's genuine signature on canceled checks which the latter produced, and became convinced that the signature of Wood to this note was forged. Later is developed that the signature of Coffey to said note was forged. It is now conceded that the signatures of both Wood and Coffey to the original note were forged.

Upon learning of these forgeries on the note Fox took the matter up with Thomas and with Cortner.  Cortner insisted that the signatures of Wood and Coffey were genuine.  After considerable negotiation it was finally agreed by Fox that he would accept in settlement of the original note a new note bearing the genuine signatures of Coffey and Wood, which Cortner undertook to procure.

In September, 1920, about the time the original note matured, Fox received through the mail the note in suit for $2,000, payable to Thomas and indorsed by Thomas, signed by Cortner and Wood, and signed by Coffey as surety.  Cortner had paid to Fox the $93, the difference between the face of the old note and the new note, and presumably had paid the interest on the old note.

In their negotiations Fox told Cortner that in view of the previous dispute the signature of Wood and Coffey to the new note would have to be witnessed, and the new note contained the following:  "Witness to Coffee and Woods signature only H. G. Wade."

Notwithstanding the signatures of Coffey and Wood to the new note appeared to have been witnessed, Fox very frankly testifies when his attention is called to the matter in re-examination that he did not accept the new note upon receipt thereof.  Shortly after receiving the new note Fox wrote the following letter to Wood:

"Lewisburg, Tenn., Sept. 25, 1920.

"Mr. J. T. Wood, Shelbyville, Tenn.—Dear Sir: Mr. W. O. Cortner has sent me a note of $2,000 due in four months from Sept. 8th for the purpose of renewing part of the note that I hold against him, with you and W. S. Coffey as security, your name is signed to this one with Mr. Coffey and I write to know if you signed it.

"Please answer at once, stamped envelope enclosed.

Your Friend,

W. D. Fox."

In reply Mr. Edwin T. Nance, attorney at law, on his letter head wrote to Fox a letter which was duly received as follows:

"Shelbyville, Tenn., Sept. 28, 1920.

"Mr. W. D. Fox, Lewisburg, Tenn.—My Dear Mr. Fox: Mr. J. T. Wood has handed me your letter of September 25th, for reply.

"I am instructed to say that the note referred to in your letter was not signed by Mr. J. T. Wood nor by any one authorized by him to sign the same.

"I am afraid that some one is going to get in some very serious trouble if these forgeries don't stop. The other note about which we notified you was a forgery and this is also one.

"Anything we can do to assist you in tracing down the guilty parties, we are ready to do. I am,

"Yours very truly,

"EDWIN T. NANCE."

When this letter from Mr. Nance was received Fox communicated with Cortner, and saw Cortner and Coffey, and they told him that Wood had signed the new note in their presence. Fox made some other investigation, and became convinced that Wood had signed the new note. He then decided to accept it, and thus after the receipt of Mr. Nance's letter he surrendered the old note.

The first assignment of error challenges the propriety of the chancellor's action in permitting defendant to file the amended answer over the objection of complainant below. If this action of the chancellor was erroneous, never-

theless it makes no difference, if the defense of revocation was available to defendant Wood under the pleadings first interposed by him. As heretofore stated, Wood filed a plea of *non est factum,* and we think by our decisions it was permissible for him to show the recall of his signature under that plea.

Speaking of the plea of *non est factum* this court formerly said:

"It puts in issue the existence of the instrument as the deed of the party at the time the plea is pleaded; for the proper words of the plea are, that it is not his deed. 3 Chitty, Pl., 952. 2 Greenl. Ev., section 300." *State* v. *Roberts,* 11 Humph. (30 Tenn.), 541.

The court in a later case points out that a party may plead in Tennessee either generally or specially, and that a general plea (*non est factum*) includes every possible special plea (*non est factum*). *Johl* v. *Fernberger,* 10 Heisk. (57 Tenn.), 37.

In a subsequent discussion of the scope of a plea of *non est factum* in the chancery court, this court said that a defendant had the right to prove thereunder what he might have proven under the common-law plea—of which the code form was equivalent. It was said:

"Under the common-law plea of *non est factum,* the defendant may prove that the deed was delivered and still remains in escrow; or he may take advantage of any material variance between the deed as set forth by the plaintiff and the deed produced at the trial; or may give any evidence showing that the deed either (1) was originally void, or (2) was made void by matter subsequent to its execution and before the time of pleading, for it is to the time of pleading that the averment relates. 'Thus the de-

fendant may show under this issue that the deed is a forgery; that it was obtained by fraud or was executed while defendant was insane or so intoxicated as not to know what he was about, or that it was made by a *feme covert,* or to her, but her husband disagreed to it, or that it was delivered to a stranger for the use of the plaintiff, who refused it, or that it was never delivered at all; or he may show that since its execution it became void by being materially altered or canceled by tearing off the seal. But matters which do not impeach the execution of the deed, but go to show it voidable by common law or by statute, such as usury, infancy, duress or gaming, or that it was given for ease and favor, or the like, must be especially pleaded.' 2 Green on Ev., section 300." *Furnish v. Burge,* 101 Tenn., 538, 47 S. W., 1095.

These authorities show that the plea of *non est factum* impeaches the instrument sued on as the note or deed of the party at the time "the plea is pleaded." That under such plea a defendant may show that the note was made void by matters subsequent to its execution and before the time of pleading. We think, therefore, a defendant pleading *non est factum* may show that he recalled or revoked his signature after the execution of an instrument. This would be merely to show that the instrument was not his note or deed at the time of suit.

In *Furnish* v. *Burge,* supra, it was held permissible for the complainant who had joined issue on defendant's plea of *non est factum* to show that defendant had ratified his signature, although it might not originally have been a valid signature. So we think it equally permissible for a defendant to show under this plea that, although he may

have originally signed the instrument, he later made a legal revocation of his signature.

The other assignments of the complainant may be discussed together, as they relate to the fact of revocation and the right of revocation.

There is no question but that Wood was at most an accommodation maker of this note. He was a kinsman of Cortner's, and received no part of the consideration.

The rights of an accommodation party to a negotiable instrument are discussed in *Bank* v. *Johnson*, 1 Swan (31 Tenn.), 217. This is a well-considered case. It is well reasoned, sustained by abundant authority, and has been frequently cited in other jurisdictions. The court there said:

"But an accommodation bill, until it has passed into the hands of a holder for value, has no force or effect. As between the parties to such bill, no action will lie, for it confers no rights and imposes no obligations. There is no consideration upon which any right could be predicated, or any duty imposed. We have seen that if such bill be negotiated for value, the case is entirely changed, and the value paid by the holder imposes a duty on every party for accommodation, in the same manner as if he, himself, had received such value. See cases cited in Story on Bills, section 187; Chitty on Bills, 70 and 305 (margin), and cases there cited.

"If this be the true doctrine, it must necessarily follow that until an accommodation bill be negotiated for value, it is a mere voluntary and gratuitous proposition, and has not the force and effect of a valid and existing contract, such as, in point of form, it would seem to imply. Thus, in *Downs* v. *Richardson*, 5 Barnwell & Alderson, 674, the court

say that 'when an accommodation bill has the names of the different parties written upon it,' it is, in some sense of the word, a bill of exchange; but it is utterly unavailable as a security for money, until it is issued to some real holder for a valuable consideration.'

"Regarding an accommodation bill as a voluntary and gratuitous proposition, the conclusion is inevitable, that until it be negotiated and value be given for it, it may be recalled and revoked by any person, so far as relates to himself, who is a party merely for accommodation. *Dogan* v. *Dubois*, 2 Richardson's Eq. R. (S. C.), 85; *Marvin* v. *McCollum*, 20 Johns. R., 288; *Skelding* v. *Warren*, 15 Johns. R., 272.

"Mr. Chitty, in his work on Bills, says that 'although a drawer has written his acceptance on the bill, with the intent to accept the same, he may before he has communicated such fact to the holder, and parted with the bill, change his mind, and obliterate his acceptance, and thereby relieve himself from liability. But this he could not do after he had induced the holder to take the bill on the credit of his acceptance.' Chitty on Bills, 309.

"And so, an indorsement, like an acceptance before it has been delivered to a *bona fide* holder, for value, may be revoked. Chitty on Bills, 343, margin; *Cox* v. *Troy*, 5 Barn. & Ald., 474; 1 Dow & Ry., 38."

To the same effect see 8 C. J., 258, and cases there cited.

The Negotiable Instruments Law makes no change in these principles.

"An accommodation party is one who has signed the instrument as maker, drawer, acceptor or indorser, without receiving value therefor, and for the purpose of lending his name of some other person. Such a person is

liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party." Thompson's-Shannon's Code, section 3516a28.

It cannot be insisted for Fox that he was a holder for value of the note sued on at the time he received Mr. Nance's letter. At that time according to Fox's own testimony he had not accepted the new note and had not surrendered the old note, nor any of his rights with respect to the old note.

The question then arises as to whether the letter referred to amounted to a revocation of Wood's signature. We think it did. The letter was in response to a note from Fox, advising that he held a note for $2,000 purporting to have been signed by Wood, and desiring to know if Wood had in fact signed it. To this letter Wood answered through his attorney that the note had not been signed by Wood nor by his authority. The note was declared to be a forgery, and there was a threat of prosecution of the guilty parties.

A revocation is accomplished either by erasing the signature or by notifying those interested that the party revoking does not desire or intend to be bound by his signature. *Teague First State Bank* v. *Hare* (Tex. Civ. App.), 152 S. W., 501. See, also, *Second Nat. Bank* v. *Howe,* 40 Minn., 390, 42 N. W., 200, 12 Am. St. Rep., 744; *Dogan* v. *Dubois,* 2 Rich. Eq. (S. C.), 85; *May* v. *Boisseau,* 8 Leigh. (35 Va.), 164.

We regard the language of Mr. Nance's letter as quite explicit to the effect that Wood did not intend to be bound by his signature on the note herein. The signature was denounced as a forgery, as having been made without au-

thority, trouble for the guilty parties promised and the letter disclosed the fact that Wood had placed the matter in the hands of an attorney.

In *Bank* v. *Johnson,* supra, the indorser of the bills told a director of the bank which later discounted them that he had indorsed no bills for Connor, and that he would not, and that he did not wish the bank to take any bills with his name upon them. It appeared in that case that he had indorsed these bills, thinking that they were notes given for a different purpose. The court held that the statements made to the bank director amounted to a revocation of the indorser's signature. So we think here that the repudiation of his signature by Wood before the note was accepted by Fox was notice to Fox that Wood did not intend to be bound on the note, and was a revocation.

It is urged, however, that this note had been negotiated to Thomas before Fox received it, and that Wood could not recall his signature after this negotiation. This presents a question of some difficulty. The Negotiable Instruments Act provides:

"That a holder who derives his title through a holder in due course, and who is not himself a party to any fraud or illegality affecting the instrument, has all the rights of such former holder in respect of all parties prior to the latter." Thompson's Shannon's Code, section 3516a-57.

So while Fox had the notice of revocation in the Nance letter before he accepted the note, still if Thomas was a holder in due course, with good title, he could have passed that title to Fox, regardless of Fox's knowledge. But was this note ever negotiated to Thomas? Was he ever the holder thereof?

The statute says:

"An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof. If payable to bearer, it is negotiated by delivery; if payable to order, it is negotiated by the indorsement of the holder completed by delivery." Thompson's Shannon's Code, section 3516a29.

" 'Holder' means the payee or indorsee of a bill or note, who is in possession of it, or the bearer thereof." Thompson's Shannon's Code, section 3516a189(7).

The record before us does not show that Thomas was ever at any time the holder of the note in suit. It does not appear that he was ever in possession of the completed note or the bearer of it.

The note sued on was prepared by Fox and intrusted to Cortner to procure the execution thereof. According to complainant's proof Cortner procured Wood's signature thereto. Inferentially it would seem that Thomas had indorsed the note before it was presented to Wood. When signing the note as a witness, Wade limited his attestation "to Coffee and Woods signature only." Cortner was handling the note and getting it up, and there was no occasion for Wade to exclude Cortner's signature from his attestation. It is probable, therefore, that the note had already been indorsed by Thomas when Wade saw it, and that he wished to relieve himself of the responsibility of appearing to attest the signature of Thomas.

But if Thomas later indorsed the note, it does not seem to have been left in his possession. He did not deliver it to Fox. In his testimony, Fox says that he does not recall who sent him the note, that it came in the mail. In his letter to Wood, however, of September 25, 1920, Fox says, "Mr. W. O. Cortner has sent me a note for $2,000,"

etc. We accept the statement in the letter as being the truth; the letter having been written while the matter was fresh in Fox's mind.

There is a conflict in the authorities as to whether the payee of a note under the negotiable instruments statute can be a holder thereof. 8 C. J., 469, and cases cited. This court expressed the idea that the payee might be a holder in the opinion in *Bank* v. *Bank,* 115 Tenn., 64, 71, 88 S. W., 939, 112 Am. St. Rep., 817. The question was not discussed, however, in that case, and this expression can scarcely be considered as one of the points decided.

We pass over this controvery, since we scruple that the payee in this case ever was a holder in any view of the law. It would have to appear that Thomas was a holder in due course to enable him by his indorsement to confer an irrevocable title on Fox.

The Negotiable Instruments Act provides respecting the holder as follows:

"Every holder is deemed *prima facie* to be a holder in due course, but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he, or some person, under whom he claims acquired the title as a holder in due course. But the last-mentioned rule does not apply in favor of a party who became bound in the instrument prior to the acquisition of such defective title." Thompson's Shannon's Code, section 3516a58.

Since the enactment of this statute this court has adopted as correct the following rule of evidence:

"If the party primarily liable proves fraud or illegality in the inception of the instrument, or if, from the circumstances, a strong presumption of fraud is raised, the holder

must then show that he acquired *bona fide* for value under circumstances creating no presumption that he knew the facts which impeached its validity." *Bank* v. *Chatfield,* 118 Tenn., 481, 493, 101 S. W., 765, 768 (10 L. R. A. [N. S.], 801).

In this case the defendant, Wood, primarily liable on this instrument, showed that the first note negotiated to Fox bore Wood's forged signature, and that Cortner undertook to procure a note containing Wood's genuine signature. Thomas knew this. Cortner was proven to have forged Wood's name to several notes. He and Wood were kinsmen. Wood was a man who got drunk. Cortner was equipped with a bottle of whisky when he sought to procure Wood's signature to the note in suit. Wood was taken out in an automobile by Cortner and others and given whisky before he signed the note. During the same evening Wood became helplessly drunk, and was carried home. The parties who testified that Wood signed the note were more or less interested in establishing that fact. One of these witnesses was a person whom Cortner had taken around with him to witness other signatures afterwards controverted. Wood had previously declined to sign this note for Cortner.

These suspicious circumstances having been shown to attend the execution thereof, under the rule of *Bank* v. *Chafield,* supra, it would have been incumbent on Thomas to show that he acquired the note *bona fide* for value, free of guilty knowledge, before he could have maintained a suit in the capacity of a holder in due course. We think, therefore, to enable Fox to rely on any title acquired from Thomas, it was incumbent upon Fox himself to have shown that Thomas was such holder in due course. *In re Hopper-*

*Morgan Co.* (D. C.), 156 Fed., 525. There is no proof at all on the subject.

The note in suit was recalled as we have seen before the old note was surrendered. The new note, therefore, cannot be treated as a renewal. The new note was recalled before it was accepted. No question of ratification can therefore arise.

We think complainant is entitled to no recovery as against defendant Wood for the reasons stated. The decree of the chancellor will accordingly be affirmed.