30621, 30622. McWANE CAST IRON PIPE COMPANY *v.* BARRETT; and vice versa.

DECIDED MARCH 10, 1945.

W. M. Lester, W. K. Miller, S. S. Flythe, for plaintiff.
Lee, Congdon & Fulcher, for defendant.

PER CURIAM. The jury returned a verdict in favor of the plaintiff, McWane Cast Iron Pipe Company, against the defendant, Augusta National Golf Club, the maker of the note sued on, and in favor of the defendant Barrett, trading as Barrett Supply Co., the indorser of the note. The plaintiff filed a motion for new trial, which the defendant Barrett moved to dismiss, and by cross-bill excepted to the court's refusal to sustain his motion. The plaintiff excepted to the overruling of its motion for new trial.

■ We will discuss first the assignment of error in the cross-bill, i. e., that the court erred in overruling the motion to dismiss the motion for new trial. By the original order passed in term, May 28, 1936, the hearing of the motion for a new trial was set for July 24, 1936, in vacation. The movant served the defendant with a copy of the motion and the rule to show cause why it should not be granted. The defendant accepted service on May 28, 1936. "An order passed in term, setting the hearing of a motion for new trial in vacation, in effect keeps the term, relatively to that particular case, open until such motion shall have been decided. *Herz* v. *Frank,* 104 *Ga.* 638 (30 S. E. 797). So where, by an order passed in term, the hearing of a motion for new trial is set for a particular day in vacation, that day, relatively to such motion, is in legal contemplation a continuance of the term at which the order is granted; and if the motion is not, at the time thus fixed, either heard on its merits or dismissed," and there is no express written order continuing it to some subsequent day, it will go over to the next term of the court in which it was made. *Blakely Lumber Co.* v. *Reynolds Lumber Co.,* 173 *Ga.* 602, 607

■

(160 S. E. 775). The motion for new trial was set for a hearing with the right of the movant to have "until the hearing of said motion, whether the same take place at the time originally set, or at some subsequent time, either in term time or in vacation, in which to prepare and present for approval a brief of evidence, said brief when approved, to be thereafter filed. It is further ordered that the movant have leave to amend the motion any time on or before the hearing, either in term time or in vacation." Such order, passed in term, setting the hearing of the motion for a designated date in vacation, in effect, kept the term, relatively to that particular case, open until the day designated, and when on the day designated the motion was not heard on its merits or dismissed, and no express written order made continuing it to a subsequent day, it went over to the next term of the court in which the motion was made. Thereafter, in the absence of an order fixing the date for a hearing, it went over from term to term, without any action thereon either by the plaintiff or the defendant, until December 7, 1943, when the movant filed its amendment thereto. Thereafter, the defendant Barrett filed a motion to dismiss the plaintiff's motion for a new trial. The plaintiff's motion for new trial and the defendant's motion to dismiss the plaintiff's motion for a new trial came on to be heard before the judge on June 2, 1944, and after hearing the motions, the motion to dismiss was overruled, the grounds to the amended motion for new trial were approved, the brief of evidence as presented was approved, and the motion for new trial was also overruled. "Where a motion for new trial has been set down for a hearing, with the right of the movant to have 'until the final hearing, whenever it may be had, to present for approval a brief of the evidence,' the movant is not required to so perfect his motion before the day set for the hearing; but it will be sufficient if the brief of the evidence is presented during the progress of the hearing and before the case be dismissed." *Chandler* v. *Chandler,* 191 *Ga.* 172 (2) (11 S. E. 2d, 666); *Webb* v. *Nobles,* 195 *Ga.* 287 (24 S. E. 2d, 27); *City of McRae* v. *Folsom,* 191 *Ga.* 272 (11 S. E. 2d, 900). In the instant case the judge was authorized to find that shortly before the date set for the original hearing of the motion for a new trial, counsel for both the movant and the respondent had agreed to continue the hearing indefinitely,

and the case was not called or dismissed on that date; neither was there any order passed on that date. Under all the circumstances of this case, the original order was not vacated because the case was not heard at the time set therefor, but was a continuing order and continued in force until the final hearing on June 2, 1944. *Maynard* v. *Head*, 78 *Ga.* 190 (1 S. E. 273); *Shockley* v. *Turnell*, 114 *Ga.* 378, 381 (40 S. E. 279); *Cook* v. *Attapulgus Clay Co.*, 52 *Ga. App.* 610, 616 (184 S. E. 334). In the motion to dismiss the motion for new trial, the movant contended that the motion for new trial, having remained of file for seven and a half years, should be treated as having been abandoned, and should have been dismissed, and that after seven and a half years the motion for a new trial constituted a stale demand which was not prosecuted with reasonable diligence, and therefore should have been dismissed by the court. Even though the motion for a new trial had been pending in the court for seven and a half years the overruling of the motion to dismiss the motion for a new trial, under the circumstances of this case, we think was not reversible error.

■ We will now discuss the main bill of exceptions. The plaintiff, McWane Cast Iron Pipe Company sued Augusta National Golf Club as maker and F. M. Barrett, trading as Barrett Supply Company, as indorser on a promissory note which was past due. A copy of the note and letter sending the note to the McWane company are as follows: "$3000. Augusta, Ga. June 1st, 1932. Eight months after date we promise to pay to Claussen-Lawrence Construction Company, exactly three thousand dollars. Payable at Augusta, Georgia, with interest at 6%. Augusta National Golf Club, value received. By: Robt. T. Jones Jr., Pres." On the face of the note is stamped: "Noted and protested for nonpayment, Feb. 1, 1933, Otis Deas, Notary Public, Richmond County, Georgia." The note bears the indorsement on the back thereof: "Pay to the order of Barrett Supply Company without recourse. Claussen-Lawrence Construction Company by J. C. H. Claussen, Secretary & Treasurer." Also, the further indorsement: "Pay to the order of McWane Cast Iron Pipe Company—Barrett Supply Company, by F. M. Barrett, Mgr." The letter reads as follows: "Gentlemen: Enclosed find note of the Augusta National Golf Club made payable to the Claussen-

Lawrence Construction Company and indorsed to our company by them without recourse. We have indorsed this note to the McWane Cast Iron Pipe Company which is a plain indorsement and will naturally be with recourse, meaning that should the Augusta National Golf Club fail to pay this note at its maturity, we will then be responsible for its payment and not Claussen-Lawrence Construction Company, as they are taking a note for part of their account also. You will also find enclosed our check for $1300, and, with these two payments this will balance our account within approximately $50 of the amount due. There are some credits claimed by the Claussen-Lawrence Construction Company which we will work out with them when final settlement is made and forward you our check to balance our account."

Before writing the above letter the following correspondence took place between the parties: Barrett Supply Company to plaintiff. "May 26, 1932. Attention Mr. P. M. Lovell, Auditor. Gentlemen: With reference to our account for the material furnished for the Augusta National Golf Course, we regret very much that we have been unable to take care of these statements as always has been our usual custom at the end of the month following purchase. As we explained to your Mr. Grant that our profits on this project were going to be so small we would not be able to take care of same only as we were paid by the contractor as the contractor had arranged with us that he would likewise take care of his account as he was paid by the National Golf Club. It has recently developed that they are going to be a little bit pressed for cash at the completion of the irrigation system. They have asked us to accept their note in payment for the balance on the irrigation contract, which will be approximately $9000. Their notes would be in the form of three $3000 notes made payable to the Claussen-Lawrence Construction Company payable in February, 1933. The Claussen-Lawrence Construction Company have agreed to keep one of these notes themselves and endorse the other two over to the Barrett Supply Company without recourse. We propose to also keep one of these $3000 notes and indorse the other to the McWane Cast Iron Pipe Company without recourse, this would make each of us as we are the principals involved have one of the $3000 notes. For your information I would like to advise that there is no question in my mind as to the financial responsibility of

this company. I have been reliably informed that they have already spent in cash over $150,000. They hope to finish the project by the first of December, which is the beginning of our tourist season and pay off these three $3000 notes with memberships pledged for the opening of the season. This is one of the largest propositions in the way of golf course that has ever come into the South, backed by men of enormous wealth, but hard to get in touch with during the summer season as they have all returned to their homes in the North. Please advise us if this arrangement will be satisfactory with you, and we will arrange to settle our account in full with you with the $3000 note and the balance in cash. Mr. Wendell P. Miller asked me to instruct you to bring this matter to the attention of Mr. McWane for his consideration."

Plaintiff to Barrett Supply Company. "May 31, 1932. Attention Mr. F. M. Barrett. Replying to your letter of May 26th with reference to the financing of the Augusta National Golf Course. Will say that we have been discussing some financial arrangements with Mr. Wendell P. Miller and have agreed to a proposition from him whereby we would carry a portion of the balance due us, the figures tentatively agreed upon were that $3000 of the note from the Club to the Claussen-Lawrence Construction Company would be made in two notes of $1500 each. Each of these notes would be indorsed to the Claussen-Lawrence Construction Company and the Barrett Supply Company and one of them was to be discounted by some Augusta Bank and we were to carry the other $1500 note ourselves, however, the notes were not to be indorsed without recourse as all of our transactions were with your good company and naturally we are looking to you for payment. The balance due us, over and above $3000, is to be paid in cash. We trust Mr. Miller has discussed this arrangement with you and that you are entirely familiar with it at this time."

Barrett Supply Company to plaintiff. Written after letter accompanying note. "March 30, 1933. Gentlemen: Referring to your letter of March 24th regarding the $3000 note of the Augusta National Golf Club in which they asked for an extension until April 15th, 1934, we do not recall that we made any obligation to you when this note was accepted that we would take care of the note if the Augusta National Golf Club failed to do so when the note was due, but we do recall an understanding with your Mr.

Grant that we were to pay you as we were paid. However, we do not disclaim any responsibility of this paper as we realize fully our responsibility. We believe an extension of time as they have outlined in their letter is the only solution to their problem. Conditions brought about by the last banking holiday have upset their plans to such an extent that the only thing left for them to do will be for their creditors to extend further time as bankruptcy or receivership would mean an entire loss to every creditor. The sale of a golf course at public outcry would mean practically no bidders to execute the first mortgage bonds. The property would then go back to the bond holders at less than one fourth the amount spent to develop it as a golf course. It is all out of the question for us to even consider paying the note at this time without considerable sacrifice. However, we believe an extension of time will make this property work out without any loss to your company or ourselves, as it seems the only sensible thing for the creditors to do at this time. The Augusta National Golf Course is indebted to us individually for other material furnished and we have signed this agreement providing for this time extension. We understand that practically all of the creditors have agreed to this extension plan and they are very hopeful that conditions will be better and that they will be able to pay their outstanding indebtedness at the close of their next season."

The note in question was given for pipe and fittings which were used in the construction of the Augusta National Golf Club. This merchandise was shipped to the defendant by the plaintiff upon ten written orders containing specifications. The orders were signed in the name of the defendant and were shipped by the plaintiff to the defendant from the plaintiff's place of business in Alabama. The record further shows that the plaintiff collected for the purchase-price of the same with the exception of $3000 of the principal, and remitted for the merchandise to the defendant. The record also shows that the defendant received a commission of two and a half per cent. on the purchase-price of the merchandise.

Special ground 4 should be considered along with the general grounds. That ground reads in part as follows: "Plaintiff contends that the court erred in the following ruling as to the evidence: Thus in the trial, F. M. Barrett, defendant, testified: 'I signed the note in order that they could hypothecate it, or use

it with such indorsement, so they could get their money, or get some cash, which they couldn't get with the original note.' Plaintiff: 'We ask that the evidence be ruled out, on the ground that it is oral testimony varying and contradicting the terms of a written contract and written agreement. There is a letter in evidence which he admits and in which the witness says he sent the note—he indorsed it with recourse and would pay it.' The court: 'I will leave it in.'" Then there appears in this special ground reference to the note sued upon and the entries thereon, together with a copy of the letter written by the defendant to the plaintiff bearing date of June 10, 1932, all of which are copied hereinabove.

In our opinion the oral evidence of the defendant Barrett, the admission of which is excepted to in this special ground of the motion for new trial, varied and contradicted the terms of the written contract and the written agreement between Barrett and the plaintiff, as shown by their letters to each other, and was inadmissible. With that evidence eliminated, the evidence demanded a finding that Barrett was not an accommodation indorser of the note sued on, but was an indorser for value in due course. This is clearly shown by his letter to the plaintiff, dated June 10, 1932, in which he stated: "We have indorsed this note to the McWane Cast Iron Pipe Company which is a plain indorsement and will naturally be with recourse, meaning that should the Augusta National Golf Course fail to pay this note at its maturity, we will then be responsible for its payment."

We think the legal evidence, oral and documentary, demanded a verdict for the plaintiff and that the denial of a new trial was error. See in this connection the Code, § 20-704 (1), as follows: "Parol evidence is inadmissible to add to, take from, or vary a written contract. All the attendant and surrounding circumstances may be proved, and if there is an ambiguity, latent or patent, it may be explained; so if a part of a contract only is reduced to writing (such as a note given in pursuance of a contract), and it is manifest that the writing was not intended to speak the whole contract, then parol evidence is admissible." The evidence in this case presents no exception mentioned in this Code section that would authorize the admission of parol testimony of which complaint is made. There is no merit in any of the other grounds. The court erred in overruling the motion for a new trial.

*Judgment reversed on the main bill of exceptions, and affirmed on the cross-bill. Broyles, C. J., and Gardner, J., concur.*

MacIntyre, J., dissenting. Unquestionably, if the contract of indorsement could be shown to be an accommodation indorsement and it could be shown by parol evidence that there was no consideration therefor, the legal evidence in this case authorized the verdict for the defendant, the accommodation indorser. "Parol evidence shall be admissible to show that the writing was either originally void or subsequently became so." Code, § 38-503. I think that all the other evidence, both written and oral, when considered in connection with the note sued on, would have authorized a finding by the jury that the defendant, when he said in his letter accompanying the note that "we will then be responsible for its payment," meant that he would be responsible for its payment as an accommodation indorser, and that the plaintiff so understood, or at least that the meaning was ambiguous and could be explained by parol. "An accommodation party is one who has signed the instrument as . . indorser without receiving value therefor and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party." Code, § 14-306. This code section is in the exact language of section 29 of the negotiable instruments law.

Promissory notes and indorsements thereon are subject to the rule that a valid written instrument can not be contradicted or varied by parol evidence. Code, § 38-501. But it is equally true that a matter going to the existence of a contract is not within the above rule. § 38-503. The evidence for the plaintiff was to the effect that there was a consideration for the indorsement, and that the note passed to the plaintiff before due, in due course of business. This made out a prima facie case for the plaintiff and in the absence of any showing to the contrary would have authorized a verdict in its behalf. However, the defendant contended, and if the parol evidence allowed by the court was properly admitted, his evidence would have authorized the jury to find that he was an accommodation indorser; that there was no consideration and the party accommodated was the plaintiff. In short, the defendant's contention was that there was in existence no legal contract be-

tween him and the plaintiff. The evidence was undisputed that the plaintiff, the party who the defendant contended was the party accommodated, had not negotiated the note in question. An accommodation indorsement does not become a contract until it is negotiated to a bona fide holder for value. Dean *v.* Lyde, 223 Ala. 394 (136 So. 857). As between an accommodation indorser and the party accommodated, an accommodation indorsement represents no obligation whatever, in that the contract of indorsement has no inception until it has been negotiated to a bona fide holder for value. Kennedy *v.* Heyman, 183 App. Div. 421 (170 N. Y. Supp. 828); Second National Bank *v.* Howe, 40 Minn. 390 (42 N. W. 200, 12 Am. St. R. 744); Dean *v.* Lyde, supra.

The indorsement being attacked as an invalid contract we think that parol evidence was admissible to prove that no valid contract was in existence. Hence we do not think the court erred in permitting parol evidence to show that the contract of indorsement had no legal inception and was not a valid contract. *Jewell* v. *Norrell,* 66 *Ga. App.* 11, 14 (16 S. E. 2d, 797). If the court was correct in permitting the parol evidence, which denied the existence of a valid legal contract between the plaintiff and the defendant, as we think he was, this testimony, together with the other evidence and the circumstances proved, authorized the jury to find: that the defendant was an accommodation indorser without consideration; that the plaintiff was the party accommodated; that the note had not been negotiated to a bona fide holder for value; that the contract of indorsement had no legal inception and was not binding; that the accommodation indorser, the defendant Barrett, who was prima facie liable to the plaintiff by virtue of the indorsement, had relieved himself from liability by showing by parol evidence and by circumstances surrounding the transaction that he was an indorser for the accommodation of the plaintiff, and that, as between himself and the plaintiff, it was understood and agreed that he should not be liable to the plaintiff for payment of the note. The evidence authorized the verdict in favor of the defendant Barrett, the indorser.

Even if the purported contract is reduced to writing and recites a consideration, the defendant can always prove a total want of consideration and that, by reason of the fact that there was no consideration, the contract was invalid or void. An accommoda-

tion maker of a note containing the words "value received" was not estopped to deny consideration; such words being a mere admission, and insufficient even to make a jury question, if all other evidence shows that there was no consideration. Kennedy *v.* Heyman, supra. In the instant case the evidence was contradictory and a jury question was presented. In Strickland *v.* Henry, 175 N. Y. 372 (67 N. E. 611), the Court of Appeals of New York said, in effect, that "where the defendant in an action on a note claimed that it was an accommodation note and without consideration, the question whether such evidence was true was one of fact for the jury; the testimony of the defendant being contradicted by his admission in the body of the note that it was given for value received and the testimony of the payee being in conflict with his admission resulting from the indorsement of the note; but that the "defendant [when he testified that the note was an accommodation note and without consideration] was contradicted by an admission of his own in the body of the note that it was given for value received. Now, while it was open to defendant to contradict that statement, and to show that, as a matter of fact, it was without consideration, the note in the possession of plaintiff raised the presumption that it was given for a good consideration, and passed to plaintiff in due course of business. The defendant's evidence tended to overthrow this presumption. Whether it was true was—in view of the legal presumption raised by plaintiff's possession of the note indorsed by the payee, and the recital therein that that defendant had received value for it—a question of fact to be determined by the jury." (Brackets mine.) Moreover, even if the letter which accompanied the note be considered as part of the transaction, and that the two papers constituted but one written contract, there is nothing in either of them, or both together, except an unconditional promise to pay. There is no other promise, or term, or condition which the defendant could contradict or vary, for there are none therein, unless they are ambiguously expressed, and if ambiguously expressed, the Code, § 38-502, would prevail. The defendant should be permitted to show by parol that there was no consideration for the alleged contract and hence there was no contract upon which to base the suit. A valid contract must have a consideration, otherwise it is void. The defendant was denying the existence of a contract, and I think he was entitled

to show by parol that no contract of indorsement had any legal inception. *Jewell* v. *Norrell,* supra. I think that the case should be affirmed.