37723, 37724.  REID *v.* BRYANT;  and *vice versa.*

DECIDED SEPTEMBER 9, 1959.

106

*H. A. Woodward, Killebrew, McGahee & Plunkett,* for plaintiff in error.

*Cohen, Cohen & Slaton, Rodney S. Cohen, Paul T. Chance,* contra.

GARDNER, Presiding Judge. ■ Since a decision on the cross-bill of exceptions, if rendered in accordance with the contentions of the defendant in error, would render moot the questions raised by the main bill, the cross-bill will be first considered here.

The motion to dismiss alleges that the defendant (plaintiff in error in the main bill of exceptions) made no bona fide attempt to perfect the record, prepare a brief of evidence, or request a hearing on his motion for new trial for a period of 6 years and 8 months, sought no agreement or extension of time for this purpose, and thus clearly indicates that he has abandoned any further prosecution of his motion for new trial. The response set out that the defendant's counsel submitted a brief of evidence to the counsel for the plaintiff in May, 1952; that he inquired of him on May 6, 1952, if it was ready and received the reply that his secretary was then redrafting it; that since that date counsel for the plaintiff never contacted counsel for the movant or submitted any brief of evidence as promised and nothing further was done until November 7, 1958, when counsel for the plaintiff made the motion to dismiss; that the defendant immediately upon service of the same obtained the transcript of evidence from the plaintiff's counsel and has prepared a brief of evidence which is herewith submitted, and stands ready to proceed with the motion for new trial at any time set by the court.

The original motion for new trial filed on February 15, 1952, set the hearing for April 5, 1952. The following language appears in the order: "Movant may amend said motion at any time before the final hearing. If, for any reason, said motion is not heard and determined at the time and place above fixed, it is ordered that the same shall be heard and determined at such time and place in vacation as counsel may agree upon, and upon failure to agree, then at such time and place as the presiding judge may fix on the application of either party, of which time and place the opposite party shall have at least five days' notice. If, for any reason, this motion is not heard and determined before the beginning of the next term of this court, then the same shall stand on the docket until heard and determined at any term thereafter. It is further ordered that

the movant have until the hearing, whenever it may be, to prepare and present for approval a brief of the evidence in said case, and the presiding judge may enter his approval thereon at any time, either in term or vacation, and if the hearing of the motion shall be in vacation, and the brief of the evidence has not been filed in the clerk's office before the date of the hearing, said brief of evidence may be filed in the clerk's office at any time within ten days after the motion is heard and determined."

On April 4, by consent of counsel, the hearing was continued to May 16, 1952, this order reciting it was "with all rights preserved as provided for in the motion for a new trial dated February, 1952, with reference to amended motion, approval thereof, approval of the brief of evidence and all other matters pertaining thereto, up to and including the date same is herein continued to *or any other date thereafter that same may be heard.*" (Emphasis added).

There is no provision of law requiring the hearing of a motion for new trial on any given date. Code § 70-302 provides in part that where a hearing on a motion for new trial is adjourned to the next term, the motion stands for hearing in term as though no order had been taken. In *McWane Cast Iron Pipe Co.* v. *Barrett,* 72 *Ga. App.* 161, 162 (33 S. E. 2d 528) the motion had been pending for seven and a half years, and a motion was made in almost the same language as this motion. The court held that "when on the day designated the motion was not heard on its merits or dismissed, and no express written order made continuing it to a subsequent day, it went over to the next term of the court in which the motion was made. Thereafter, in the absence of an order fixing the date for a hearing, it went over from term to term, without any action thereon either by the plaintiff or the defendant" until the motion to dismiss was made, and that, under these circumstances, the judgment of the trial court denying the motion to dismiss was not error. An order merely continuing the hearing date for the motion for new trial, which contains no abridgement of the right granted in the original motion to have until the date of hearing to perfect the motion and to submit the brief of

evidence, does not limit the right of the plaintiff in error to have until the time of final hearing, whenever that may be, to perfect his motion. *Trammell* v. *Matthews,* 86 *Ga. App.* 661 (1) (72 S. E. 2d 132); *Wilson* v. *Gundy,* 83 *Ga. App.* 566 (1) (64 S. E. 2d 292); *Maynard* v. *Head,* 78 *Ga.* 190 (1) (1 S. E. 273). Both the original order and the order continuing the hearing granted the plaintiff in error until the date of hearing, whenever that might be, to perfect his motion for new trial. The renewal order included by reference the contents of the order, and the original order provided that if, for any reason, the motion was not heard on the day fixed it should stand on the docket until heard and determined, and that, if no time of hearing was agreed on, the court should set a time on application of either party, the opposite party having five days' notice thereof. Thus the order fully protected the plaintiff in error; the defendant in error might, at any time within the six-year period during which the motion was pending, have called it up for hearing by giving the notice provided for, but he did not do so. The response of the plaintiff in error shows facts which, if proved, would place the onus for the delay on the party now complaining. Since neither general law nor the terms of this order require the dismissal of the motion for new trial, and since in his response the defendant in error alleges facts which show there was no intention on his part to abandon the motion for new trial, the trial court did not err in denying the motions to dismiss and to strike the response to the motion to dismiss.

■ The assignment of error in the main bill of exceptions on the ruling sustaining a motion to strike out a part of the defendant's answer, not having been argued in this court, will be treated as abandoned.

■ Although the trial court has no jurisdiction to amend his certificate to the bill of exceptions after he has signed the same and it has been filed in this court (*Pryor* v. *Pryor,* 164 *Ga.* 7, 137 S. E. 567), nevertheless, the certificate of the trial court approving grounds of a motion for new trial "will be construed by this court as approving as true only such statements in the ground as are purely statements of fact, and not as approving other allegations therein, which, although stated as facts, should

properly be construed as mere conclusions of the movant based upon facts set forth in the ground." *Ernest L. Miller Co. v. Gauntt*, 93 *Ga. App.* 178, 180 (91 S. E. 2d 104). Accordingly, the special grounds of the motion for new trial here which allege that the plaintiff failed to prove any special damages and that the verdict as rendered is excessive will be considered in connection with the general grounds of the motion for new trial.

■ On the trial there was abundant evidence to establish the plaintiff's contention that the purchase price included not only the service station and garage but the good will of a going business concern and that the defendant's agreement not to enter into competition with him for a period of $8\frac{1}{2}$ years was understood to be a part of the consideration for the purchase price; that the defendant almost immediately informed numerous persons that he was going to start another filling station on his adjoining vacant lot; that he actually did so, and that he lured away the four mechanics employed by the plaintiff by payment of higher wages; that the defendant did have a lease with Charlie Phillips under which Phillips paid $75 a month and Phillips invested about $5,000 in erecting the service station on the defendant's property, the improvements to belong to the defendant at the expiration of the lease; that Phillips had a station some 30 miles away and the defendant ran the filling station immediately adjoining the plaintiff's, took in receipts, paid bills, and hired and fired personnel. There was also a garage on the premises rented to a third party. That this agreement was enforceable see *Langenback* v. *Mays*, 205 *Ga.* 706 (54 S. E. 2d 401, 11 A. L. R. 2d 1221).

The sole question for decision, accordingly, is whether there is in this record sufficient evidence of damages to sustain a verdict in favor of the plaintiff for $3,000. The plaintiff's books showed that in the 12-month period immediately following the opening of the defendant's service station the plaintiff's combined loss of income from his garage and service station operations was $4,828.10, but no figures are shown as to the loss of profit resulting from this loss of gross income. There was evidence that the property for service station and garage purposes was worth approximately 20% less by reason of the fact that a competing enterprise was located immediately adjacent to it.

There was also evidence that the defendant, by obtaining "independent" sources of gasoline and oil, advertised and sold his products at 5¢ to 6¢ a gallon less than those the plaintiff offered for sale under his contract with Shell Oil Company. While it is true in a case of this kind that damages must be established by evidence, as stated in *Valdosta Drug Co.* v. *Mashburn Drug Co.*, 183 *Ga.* 471, 477 (188 S. E. 694) it is also true, as there stated that it is "practically impossible . . . to establish the exact amount or anything near the exact amount of its damages and loss, although there had been a complete failure to observe the terms of the contract involved in the sale of the good will." If the verdict here is one resting squarely on loss of profits, then it is true that the plaintiff has failed to show a loss of profits in the sum of $3,000 or any other special sum; however, as we construe the petition, along with the defendant's own testimony to the effect that the purchase price included the business and good will incident thereto, the action is not grounded strictly on loss of profits but is based on a failure of consideration by reason of the defendant's immediate arrangements to open a competing business in violation of his agreement, his proceeding with this enterprise under the pretext of leasing the property in direct violation of a restraining order entered in this case when the matter was first pending, and his subsequent activities in approaching the plaintiff's workmen and customers with offers to pay higher wages and to undersell the plaintiff's prices. There was testimony that the opening of the competing business reduced the value of the plaintiff's business property by 20%. The damages awarded are not, strictly speaking, special damages for loss of profits but are general damages resulting from the alleged fraudulent conduct of the defendant in proceeding into direct and immediate competition with the plaintiff under the circumstances of this case. As to the sale of the good will of a business, the rule as stated in *Shaw* v. *Jones, Newton & Co.*, 133 *Ga.* 446 (8) (66 S. E. 240) is as follows: "Upon the breach of a contract of sale of the good will of a business, the measure of damages is the loss suffered by the purchaser by reason of the wrongful acts of the seller constituting the breach, and in estimating such damages all the facts and circumstances tending to show the extent thereof

may be considered by the jury; but if the plaintiff fails to furnish sufficient data to enable the jury, with a reasonable degree of certainty and exactness, to estimate the actual damages sustained by the purchaser, then his recovery will be restricted to nominal damages." The covenant not to enter into direct competition with the plaintiff here for a limited period of time stands upon the same footing; it furnished an inducement, if not a consideration, for the purchase of the defendant's property, and on its breach the jury might consider all the facts and circumstances tending to show the extent of the plaintiff's loss. They might consider not merely the loss of net profits as such, but the loss of customers, the loss of employees, and the decreased value of the business property by reason of the competitive establishment next door to it. As to the latter element, if the plaintiff was damaged by having the value of his property diminished, then he would be entitled to damages regardless of the fact that, because of a general rise in property values in the city during the year in question, the property was still worth as much or more than the purchase price which he actually paid the defendant. There was sufficient evidence to support a verdict for $3,000. The question of the amount of damages is always for the jury unless the amount is so grossly excessive as to indicate bias or prejudice on their part. *Lamb* v. *Davis*, 20 *Ga. App.* 240 (5) (92 S. E. 1009).

The trial court did not err in denying the motion for new trial.

*Judgment affirmed on main bill and cross-bill of exceptions. Townsend and Carlisle, JJ., concur.*