Patricia A. BURGESS, Plaintiff,

v.

ALLSTATE INSURANCE COMPANY, Defendant.

No. CIV.A.1:02–CV2188RWS.

United States District Court, N.D. Georgia, Atlanta Division.

Dec. 8, 2003.

Hayes Michael Dever, Patricia Jean Duffy, Friedman Dever & Merlin, Atlanta, GA, for Plaintiff.

Marvin Dewayne Dikeman, Webb Zschunke Neary & Dikeman, Atlanta, GA, for Defendant.

### ORDER

STORY, District Judge.

Now before the Court for consideration is Defendant's Motion for Summary Judgment [8–1]. After considering the arguments of the parties and the entire record, the Court enters the following Order.

### I. Evidentiary Objections

Defendant objected to several items presented by Plaintiff in her Response to Defendant's Motion for Summary Judgment as inadmissible hearsay. As a preliminary matter the Court will first address these objections. Defendant objects to four items: (1) a letter by Dr. Viktor Bouquette; (2) a Mold Lab Report prepared by Envirocure; (3) an Indoor Air Quality Report prepared by Walter H. Carter, Inc.; and (4) a Bio–Remediation estimate prepared by Environmental Investigations, Inc.

In ruling on a motion for summary judgment, a court may consider only evidence that would be admissible at trial. *White v. Wells Fargo Guard Servs.*, 908 F.Supp. 1570, 1577 (M.D.Ala.1995). Inadmissible hearsay cannot be considered on a motion for summary judgment. *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999). Evidence produced for summary judgment need not be in an admissible form if it could be reducible to admissible form for trial, *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1444 (11th Cir.1991), but the term "reduced to admissible form" as regarding hearsay includes that the item is admissible at trial for some purpose, such as a hearsay exception. *Macuba*, 193 F.3d at 1323. The evidentiary objections have not been fully briefed. Defendant did not place its objections in the form of a motion to strike or as part of its Reply to Plaintiff's Response to the Motion for Summary Judgment; the objections were filed as an independent submission and did not technically require a response. Plaintiff did not address the evidentiary objections or seek to correct them in her Surreply. Therefore, the Court will consider each item separately to determine its admissibility.

First, Defendant objects to a letter dated, January 18, 2002, by Dr. Viktor Bouquette as inadmissible hearsay. The letter is addressed "To whom it may concern" and states that Dr. Bouquette told Plaintiff that because of the reports of toxic mold in her home, she should leave the house because it is uninhabitable. He further states that he advised her to wear hazardous materials protection equipment when she returns to the home. It does appear that the letter is being presented for the truth of the matter asserted, to show that there is mold in the home and establish that Plaintiff's health related problems were caused by the mold. The letter is not only hearsay but appears to present hearsay within hearsay to the extent that it discusses air quality reports that found

mold in Plaintiff's home. Plaintiff presents no other grounds for the admissibility of the letter. In any case, the evidence is not determinative of the outcome of the present Motion. Therefore, the Court will not consider the letter by Dr. Bouquette.

Second, Defendant objects to a Mold Lab Report prepared by Envirocure. Plaintiff contacted Envirocure to test her house for mold following Dr. Bouquette's suggestion. (Burgess Dep. at 58.) Envirocure tested Plaintiff's house on October 15, 2001, and returned results around October 29, 2001. The Mold Lab Report purports to show various types of mold in each room of Plaintiff's house. The report appears to be presented for the truth of the matter asserted, to demonstrate the presence of mold in the house. Since Plaintiff has presented no other grounds for the admissibility of the report, the Court will exclude it from consideration.

Third, Defendant objects to an Indoor Air Quality Report prepared by Walter H. Carter, Inc. Plaintiff requested the inspection as a second opinion after the report by Envirocure. (Burgess Dep. at 58.) The inspection took place November 13, 2001, and the report is dated the same. The report states that there is mold inside the house, identifies the types of mold present, and gives recommendations for cleaning the areas in the house. Like the Envirocure report, the Indoor Air Quality Report appears to be presented for the truth of the matter asserted, to show the presence of mold in the house. Plaintiff has presented no other grounds for its admissibility so it will also be excluded from consideration by the Court.

Finally, Defendant objects to a Bio-Remediation estimate prepared by Environmental Investigations, Inc. The estimate is based on the Indoor Air Quality report above, and on a site visit to Plaintiff's house. The estimate itemizes specific remediation procedures and gives a total cost estimate for the project. The Indoor Air Quality report has already been excluded. Moreover, Plaintiff offers no grounds for the admissibility of the estimate. It is inadmissible as presented for the truth of the matter asserted, to show the presence of mold.

■ It is true that evidence produced for summary judgment need not be in admissible form if it could be reduced to admissible form for trial. *Macuba,* 193 F.3d at 1323. Plaintiff, however, failed to produce any response to demonstrate that evidence in the letters and reports could be admissible at trial, such as stating that the doctor and air quality experts would be available to testify at trial. *See Id.* at 1325 n. 18 (discussing a way the plaintiff could show testimony presented at summary judgment could be reduced to admissible form). Though Plaintiff had ample opportunity to reply, Plaintiff produced no response to Defendant's objections. Therefore, pursuant to Defendant's objections and Plaintiff's failure to identify relevant exceptions to the hearsay rule, the Court declines to consider the above materials in the present Motion. Moreover, the items appear to be presented to show the presence of mold in Plaintiff's house. To the extent that they are offered for this purpose, they are not necessary to the Court's determination in the present Motion because Defendant does not controvert the presence of mold in Plaintiff's house.

## II. Factual Background

This suit is a dispute over a claim under a homeowners insurance policy. The facts are undisputed unless noted. Plaintiff, Patricia A. Burgess, purchased a homeowners insurance policy from Defendant Allstate Insurance Company ("Allstate") through its agent Bill House. Allstate's "Deluxe Plus Homeowners Policy," policy number 0–21–421879–11/19, was issued on

her residence located at 4379 Beechnut Court, Roswell, Georgia 30075. The policy first issued in 1991 and remained in effect at all times relevant to this litigation.

Around September 6, 2001, Plaintiff returned home from a weekend trip and noticed water damage on her foyer roof. (Burgess Dep. at 38.) While she was not sure whether she was gone for a weekend, or a long weekend, she stated that the water damage must have happened while she was gone because it was there when she returned, but not when she left. (*Id.* at 39.) She called a contractor who repaired the roof exterior, but did not repair the interior damage. (*Id.* at 41.) The interior damage included damage to the ceiling, the wall, the foyer tiles and carpet. There was also some damage to the garage. (*Id.* at 60.)

Plaintiff also experienced water damage to her downstairs basement. On October 15, 2001, she noticed a ceiling tile that had caved in, large water marks on the walls and ceiling, and water stains. (*Id.* at 44.) The next day, a plumber determined that the problem was related to the dishwasher. The dishwasher was repaired around November 22, 2001. (*Id.* at 45.) Plaintiff did not use the dishwasher from the time she noticed the problem through the time it was repaired. (*Id.*)

In late November 2001, Plaintiff contacted her Allstate agent, Bill House, to report the water damage to her house. (*Id.* at 34.) Plaintiff was concerned about mold and water damage. (*Id.* at 35.) On November 29, 2001, Allstate claims adjuster Jocelyn Phillips came to Plaintiff's house. Phillips conducted a visual investigation of the damaged areas. It was beyond the scope of her job to determine the source of water, or otherwise touch or investigate the damage. (Phillips Dep. at 53.)

Primarily, Plaintiff was concerned about the water damage in two areas, the foyer and the downstairs basement. (Burgess Dep. at 37.) As to the downstairs basement area, Phillips concluded that water had seeped from the dishwasher and down the wall below. (Phillips Dep. at 53.) She based this determination on statements by Plaintiff that the dishwasher had been leaking, and on multiple water rings she observed which she believed indicated that the area had been wet several times. (*Id.* at 68.) Plaintiff contests that the water damage was from seepage, but instead believes that the pipe burst. (Burgess Dep. at 45.)

In the garage, Phillips observed a hole in the drywall, dark water stains where the drywall had been cut out and insulation hanging down. (*Id.* at 54.) Regarding the foyer area, Phillips observed that a single shingle had been replaced on the roof in that area and determined that there had been wind damage to the roof. (*Id.* at 56.) Plaintiff also showed Phillips a patio door where there may have been water coming in. (Burgess Dep. at 47.) There, Phillips observed mold on the carpet at the doorway. (Phillips Dep. at 58.)

Based on her observations of the downstairs basement area under the dishwasher, Phillips determined that the damage was not covered because it fell under policy exclusions.[1] (Phillips Dep. at 64.) Plaintiff contends that at the time of the inspection, Phillips told her that the water damage in the basement would have been covered but that Plaintiff had simply waited too long to make the claim. (Burgess Dep. at 67.) Phillips discussed with Plaintiff her conclusions that the claim was a result of "time element damages and not sudden or accidental in nature." (Phillips Dep. at 69.) Likewise, Phillips determined the garage leak was also excluded as re-

---

**1.** *See infra* **III. Relevant Policy Terms**

peated seepage, and the back door was excluded because it had been caused by surface water which was excluded from coverage.[2] (*Id.* at 72.) Phillips determined that the damage to the foyer would be a covered loss. (*Id.* at 75.) Phillips did not open a new claim for the foyer automatically but stated that she could do so if Plaintiff desired. (*Id.* at 76.)

In response to Plaintiff's complaints about mold, Phillips stated that mold was not covered under the policy. Additionally, Phillips concluded that there was no mold coming from the foyer area and noted that there was a light water stain but nothing black on the ceiling. (*Id.* at 77.) Furthermore, Phillips did not consider additional testing because mold was not covered under the policy. While acknowledging that mold resulting from a sudden and accidental physical loss might warrant a hygienist and remediation if the customer has attempted to mitigate the loss, Phillips found that Plaintiff had not attempted to mitigate her loss. (*Id.* at 78.)

On December 2, 2001, Plaintiff received a letter from Defendant denying coverage and signed by Jocelyn Phillips. Around November 30, 2001, Plaintiff contacted William Cook, a Georgia-licensed public adjuster, regarding the water damage and mold in her house. (Pl.'s Opp'n to Def.'s Motion for Summ. J. [12] Ex. F [hereinafter "Cook Aff."].) On December 17, 2001, Cook inspected Plaintiff's house for water damage. Cook concluded that there was water damage in several areas including the foyer, the basement, and the garage. He stated that the damage from the dishwasher was a sudden and accidental direct physical loss. (Cook Aff. ¶ 5.) Furthermore, he found a significant amount of harmful mold which he attributed to the water intrusion; he stated that it was not

the result of ordinary wear and tear, aging, gradual deterioration, insects, vermin or inherent vice. (*Id.* ¶ 6.) Cook concluded that based on his inspection and review of the policy, Plaintiff's losses were covered. Cook unsuccessfully attempted to contact Allstate by phone on behalf of Plaintiff. On January 14, 2002, he sent a letter to Chris Smith of Allstate requesting payment for the loss and advancement of Plaintiff's living expenses.[3] Smith responded by a letter dated January 23, 2002.

Plaintiff filed suit in the State Court of Fulton County, Georgia. Defendant removed the case to this Court pursuant to 28 U.S.C. § 1441(a). Plaintiff brings claims for: (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) unfair claims settlement practice; (4) declaratory relief; (5) attorneys fees and expenses of litigation; and (6) bad faith refusal to provide coverage under an insurance policy. Defendant moves for summary judgment as to all claims.

### III. Relevant Policy Terms

*Section I—Your Property*

**Losses We Do Not Cover Under Coverages A and B:**

**We** do not cover loss to the property described in **Coverage A—Dwelling Protection** or **Coverage B—Other Structures Protection** consisting of or caused by:

4. Water or any other substance on or below the surface of the ground, regardless of its source. This includes water or any other substance which exerts pressure on, flows, seeps, or leaks

---

2. *See infra* **III. Relevant Policy Terms**

3. Plaintiff moved out of her house on November 14, 2001, citing health problems due to the mold in her house.

through any part of the **residence premises.**

. . . . .

In addition we do not cover loss consisting of or caused by any of the following:

15. a) wear and tear, aging, marring, scratching, deterioration, inherent vice, or latent defect;

b) mechanical breakdown;

c) growth of trees, shrubs, plants or lawns whether or not such growth is above or below the surface of the ground;

d) rust or other corrosion, mold, wet or dry rot;

. . . . .

18. Seepage, meaning continuous or repeated seepage or leakage over a period of weeks, months, or years, of water, steam or fuel:

a) from a plumbing, heating, air conditioning or automatic fire protection system or from within a domestic appliance; or

b) from, within or around any plumbing fixtures, including, but not limited to shower stalls, shower baths, tub installations, sinks or other fixtures designed for the use of water or steam.

### *Section I Conditions*

3. **What You Must Do After A Loss**

. . . . .

b) protect the property from further loss. Make any reasonable repairs necessary to protect it. Keep an accurate record of any repair expenses.

(Pl.'s Opp'n to Def.'s Mot. for Summ. J. [12] Ex. A "Allstate's Deluxe Homeowners Policy".)

### Discussion

### I. Jurisdiction and Choice of Law

 This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiff is a resident of the State of Georgia. Defendant Allstate Insurance Company is a foreign corporation incorporated in Illinois. Plaintiff seeks to recover damages in an amount that exceeds $75,000. In diversity cases, a federal court applies the law of the forum in which it sits. *LaTorre v. Conn. Mut. Life Ins. Co.*, 38 F.3d 538, 540 (11th Cir.1994). Georgia adheres to the traditional rule of *lex loci contractus*, that contracts are governed as to their nature, validity, and interpretation by the law of the place where they were made except where it appears from the contract itself that it is to be performed in a state other than that in which it was made. *Convergys Corp. v. Keener*, 276 Ga. 808, 582 S.E.2d 84, 86 n. 1 (2003). This Court will therefore apply Georgia law to this case.

### II. Motion for Summary Judgment

 Federal Rule of Civil Procedure 56(c) provides that a district court shall grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The applicable substantive law identifies which facts are material, and a fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

When the non-moving party has the burden of proof at trial, the movant may carry its burden at summary judgment by demonstrating the absence of an essential ele-

ment of the non-moving party's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether the movant has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the non-moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Adickes v. S.J. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 606 (11th Cir. 1991).

If the movant meets this burden, the non-moving party then has the burden of showing that summary judgment is not appropriate by setting forth "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Thornton v. E.I. Du Pont De Nemours & Co.,* 22 F.3d 284, 288 (11th Cir.1994). The non-moving party cannot rely on his pleadings, but must file a response that includes other evidence showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Combs v. Plantation Patterns,* 106 F.3d 1519, 1526 (11th Cir.1997); *Isenbergh v. Knight–Ridder Newspaper Sales, Inc.,* 97 F.3d 436, 439 (11th Cir.1996). Mere conclusory allegations and assertions are insufficient to create a disputed issue of material fact. *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1081 (11th Cir.1990).

## III. Contract Interpretation

Defendant asserts that because the Allstate policy specifically excludes coverage for loss and damage caused by mold, Plaintiff's claims must fail as a matter of law. Plaintiff contends that the water damage and resulting mold infestation are covered under the policy.

In Georgia, an insurance policy is governed by the ordinary rules of contract construction. *Park 'N Go v. U.S. Fidelity & Guar. Co.,* 266 Ga. 787, 471 S.E.2d 500, 503 (1996). The hallmark of contract construction is to ascertain the intent of the parties. *Id.* When the terms of a contract are clear and unambiguous, however, the court should look to the contract alone to find the parties' intent. *Id.* In construing an insurance contract, a court must consider it as a whole, giving effect to each provision and interpreting each provision to harmonize with the others. *S. Trust Ins. Co. v. Dr. T's Nature Prods. Co.,* 261 Ga.App. 806, 584 S.E.2d 34, 35–36 (2003). Under Georgia law an insurance company is free to fix the terms of its policies as it sees fit as long as the terms are consistent with the law. It may choose to insure against some risks while excluding others. *Cont'l Cas. Co. v. HSI Fin. Servs.,* 266 Ga. 260, 466 S.E.2d 4 (1996). Additionally, three well-known rules used in the construction of insurance contracts apply. Any ambiguities in the contract are strictly construed against the insurer as drafter of the document; any exclusion from coverage sought to be invoked by the insurer is likewise strictly construed; and insurance contracts are to be read in accordance with the reasonable expectations of the insured where possible. *Richards v. Hanover Ins. Co.,* 250 Ga. 613, 299 S.E.2d 561, 563 (1983); *Broome v. Allstate Ins. Co.,* 144 Ga.App. 318, 241 S.E.2d 34, 35 (1977) ("ambiguities in an insurance contract shall be construed most favorably toward the insured and most strongly against the insurer. This is particularly true where construction of an exemption or exclusion is at issue.") The policy should be read as a layman would read it. *S. Trust,* 584 S.E.2d at 36.

In its motion Defendant solely addresses Plaintiff's claims for loss and damage caused by the mold. The crux of Defen-

dant's arguments is that the policy unambiguously excludes coverage for mold; therefore, Defendant properly denied Plaintiff's claim and all additional claims should fail. Plaintiff asserts that Defendant should have paid for her claims for water damage to her foyer and basement and that the resulting mold was caused by these covered events. In effect, Plaintiff argues that the water damage proximately caused her loss, such that even though the ensuing mold is listed as an exclusion, the entire loss should be covered. Plaintiff's argument is one for application of the doctrine of efficient proximate cause. *See* Mark D. Wuerfel & Mark Koop, *"Efficient Proximate Causation" in the Context of Property Insurance Claims*, 65 Def. Couns. J. 400, 400 (1998) ("Far from being a novelty, this principle of determining causation in property loss cases is used in most jurisdictions") (hereinafter *"Efficient Proximate Causation "*).

## IV. Efficient Proximate Cause Doctrine

 The efficient proximate cause doctrine applies when two or more identifiable causes contribute to a single property loss-at least one of them covered under the policy and at least one of them excluded under the policy. *Kelly v. Farmers Ins. Co.*, 281 F.Supp.2d 1290, 1295–96 (W.D.Okla. Sept.12, 2003).[4]

The doctrine of efficient proximate cause governs situations where a risk specifically insured against sets other causes in motion in an unbroken sequence between the insured risk and the ultimate loss. In such situations, the insured risk is regarded as the proximate cause of the entire loss, even if the last step in the chain of causation was an excepted risk. *TNT Speed & Sport Ctr., Inc. v. Am. States Ins. Co.*, 114 F.3d 731, 733 (8th Cir.1997). When an insured can identify an insured peril as the proximate cause, then there is coverage even if subsequent events are specifically excluded from coverage. *Bowers v. Farmers Ins. Exch.*, 99 Wash.App. 41, 991 P.2d 734, 738 (2000).

The efficient proximate cause doctrine has found a place in property insurance litigation over coverage for mold claims. In *Shelter v. Maples*, 309 F.3d 1068 (8th Cir.2002), a water pipe froze and burst, leaving four to six inches of standing water in the basement of a house. *Id.* at 1070. While there was only minimal structural damage from the water itself, the humidity caused mold to form on all interior surfaces of the house and the house had to be demolished. *Id.* The insurer of the homeowners policy brought a declaratory judgment action against the insured for a finding that it was not required to provide coverage for the loss. *Id.* The Eighth

---

**4.** Some jurisdictions that have adopted the efficient proximate cause doctrine permit parties to contract around it. *See TNT Speed & Sport Ctr. Inc. v. Am. States Ins. Co.*, 114 F.3d 731, 733 (8th Cir.1997) (holding that parties may contract out of efficient proximate cause doctrine under Missouri law and citing other state court decisions); *Kelly*, 281 F.Supp.2d at 1298–99 (finding that in order to contract around the doctrine, "the policy provision intended to effect the circumvention must explicitly and specifically disclaim coverage for losses that arise from a combination of excluded and covered causes, regardless of the sequence in which the various causes occurred"); *Preferred Mut. Ins. Co. v. Meggison*, 53 F.Supp.2d 139, 142 (D.Mass.1999) (stating vast majority of states uphold parties ability to contract out of concurrent causation); *Efficient Proximate Causation*, 65 Def. Couns. J. at 407 (listing states that hold that parties are free to contract out of the efficient proximate cause rule, citing *Underwood v. United States Fidelity & Guar. Co.*, 118 Ga.App. 847, 165 S.E.2d 874 (1968)). The Court notes that the policy language in this case does not meet the requirements to prevent liability based on concurrent causation.

Circuit Court of Appeals stated that "[h]ere, a covered peril, frozen-pipes, caused an excluded peril, mold, which resulted in the loss." *Id.* The court reversed the lower court and held that the determinative question was a question of fact-whether the frozen pipe or the mold was the dominant and efficient cause of the loss-and remanded for further consideration of the causation issue. *Id.* at 1071; *see also Kelly,* 281 F.Supp.2d at 1296–97 (finding efficient proximate cause doctrine has been adopted as a general principle in Oklahoma, and that question of fact for jury existed on the proximate cause of insured's loss); *Bowers,* 991 P.2d at 738 (Wash.Ct.App.2000) (holding insured's losses were covered under insurance policy based on finding that tenant's acts of vandalism in conducting marijuana growing operation in basement were efficient proximate cause of mold damage to insured's house); *Sunbreaker Condo. Ass'n v. Travelers Ins. Co.,* 79 Wash.App. 368, 901 P.2d 1079, 1085 (1995) (holding there was a genuine issue of material fact on proximate cause that precluded summary judgment). *Contra Cooper v. Am. Family Mut. Ins.,* 184 F.Supp.2d 960 (D.Ariz.2002) (finding Arizona has not adopted the efficient proximate cause doctrine and finding no coverage for losses caused by mold even though a covered water event may have also contributed to the loss).

Under an efficient proximate cause analysis, therefore, the question becomes whether the water damage, a covered event, is the efficient proximate cause of the Plaintiff's loss even though the mold, an excluded event, contributed to the loss as well. Before considering the applicability of the efficient proximate cause doctrine, the Court must first determine if the efficient proximate cause doctrine has been adopted in Georgia.

## V. Efficient Proximate Cause in Georgia

 The Court has found no cases in Georgia applying the efficient proximate cause doctrine to a case of mold infestation. However, after a review of relevant caselaw, the Court concludes that Georgia has adopted the efficient proximate cause doctrine. In fact, efficient proximate cause is well-grounded in Georgia jurisprudence. *See Dunbar v. Davis,* 32 Ga.App. 192, 122 S.E. 895, 895 (1924) ("The proximate cause is the efficient cause, the one that necessarily sets the other causes in operation. The causes that are merely incidental ... are not the proximate causes and the responsible ones, though they may be nearer in time to the result") (internal citations and quotations omitted).

In *Travelers Indemnity Co. v. Wilkes County,* 102 Ga.App. 362, 116 S.E.2d 314 (1960), fire destroyed the roof of the county courthouse and required construction of a temporary roof. *Id.* at 317. A few days later during a windstorm, a wall of the courthouse above the temporary roof broke and partially collapsed. *Id.* at 316. The insurance company contended that the proximate cause of the damage was the weakening of the wall because of the fire and that the damage was not covered under the insured's windstorm policy. The Georgia Court of Appeals affirmed the jury's finding that the windstorm caused the property loss and noted that there was no evidence to indicate as a matter of law any weakness sufficient to cause the collapse in the absence of the wind. *Id.* at 317. The court stated that "it is generally sufficient, in order to recover upon a cyclone, tornado, or windstorm policy, to show that the cause designated therein was the efficient cause of the loss, although other causes contributed thereto." *Id.* The court further noted that while there were several specific exclusions ap-

plicable to a windstorm, none applied there. *Id.* Similarly, in *Stephens v. Cotton States Mutual Insurance Co.,* 104 Ga.App. 431, 121 S.E.2d 838 (1961), the Georgia Court of Appeals reversed the trial court's directed verdict for the insurer. *Id.* at 840. The court noted that the plaintiff testified that there was some wind on the day in question. Therefore the question of whether plaintiff's loss was caused directly by a windstorm, a covered event, or by sleet and ice which were excluded events, should have been submitted to a jury. *Id.* at 840; *see also Atlantic Mut. Fire Ins. Co. v. Chadwick,* 115 Ga.App. 850, 156 S.E.2d 182 (1967) (holding where lightning struck insured premises and burned off the valve head of a water pump under the house and water escaping from the pipes caused moisture to rise and buckle the wooden flooring, with additional mold and mildew damage, such damage was a direct loss by lightning within the meaning of the policy provision); *Efficient Proximate Causation,* 65 Def. Couns. J. at 405 (stating three-fifths of American jurisdictions analyze property loss under efficient proximate cause doctrine, including Georgia, and citing *Travelers* and *Stephens* ).

## A. Breach of contract

Having established the doctrine of efficient proximate cause applies in Georgia, the Court considers its application to the present case. The application of the efficient proximate cause doctrine requires that at least two causes combine to create the property loss-one covered under the insurance policy and one excluded under the insurance policy.

■■■■■ *1. Covered losses for water damage.* Defendant contends that Plaintiff cannot establish that the water damage to her house was covered because: (1) it was not "sudden and accidental" as required by the policy; (2) Plaintiff's losses occurred prior to the water damage; and (3) Plaintiff failed to provide prompt notice to Defendant of her claims. In order to establish a *prima facie* case on a claim under an insurance policy, the insured must show the occurrence was within the risk insured against. *Calabro v. Liberty Mut. Ins. Co.,* 253 Ga.App. 96, 557 S.E.2d 427 (2001).

First, the policy at issue covers "sudden and accidental direct physical loss[es]." [5] Defendant asserts that the damage to the foyer area was not sudden and accidental because Plaintiff's statement that she "noticed" the damage after returning from a weekend out of town merely established when Plaintiff became aware of the damage and not when it occurred. In fact, Plaintiff further stated that the damage was sudden because she would have noticed it since it was in an area of the house she frequently used. (Burgess Dep. at 40.) She stated that "I know it wasn't there beforehand because there was also no paint on the banister, which would have been very noticeable going up and down the steps into the kitchen, which is a room I used a lot. So I know it wasn't there before." (*Id.*) Since the facts will be viewed in a light most favorable to the non-movant, Plaintiff has presented adequate evidence to create a genuine issue of material fact. Moreover, the Court notes that Defendant has already stated that the foyer area would be a covered claim. (*See* Phillips Dep. at 75; Pl's Opp'n to Def.'s Mot. for Summ. J. Ex. F,7 [hereinafter "Smith letter"].) As to the damage to the

---

5. The policy states:
 *Losses We Cover Under Coverages A and B:*
 We will cover sudden and accidental direct physical loss to property described in **Coverage A–Dwelling Protection and Coverage B–Other Structures Protection** except as limited or excluded in this policy.

basement, Plaintiff stated the damage was sudden, and has provided an affidavit by William Cook to support her assertion. This is sufficient for Plaintiff to carry her burden as non-movant.

Also, Defendant asserts that because Plaintiff first began having concerns about mold in August but the water damage occurred in September and October, then Plaintiff cannot prove that the water damage is the proximate cause of her loss. It is true that by Plaintiff's admission, she began experiencing mold-related problems prior to the time she claims to have experienced covered water damage. It is equally true that she claimed mold related problems after the water damage as well. Defendant does not contest that Plaintiff experienced water intrusion into her house, or that there was mold present in the house after the water damage. Nor does Defendant present any evidence that the mold was caused by any other source other than the water damage that may be covered under the policy. *Travelers,* 116 S.E.2d at 317. The Court cannot conclude as a matter of law that Plaintiff's arguably covered water damage has not caused her some loss under the policy.

Third, Defendant's argument that Plaintiff cannot recover because of her failure to provide prompt notice is unavailing. Not only does Defendant acknowledge that notice is generally a question for a jury, *Allstate Insurance v. Walker,* 254 Ga.App. 315, 562 S.E.2d 267 (2002), but its argument is problematic. At the time Phillips investigated Plaintiff's claims, she noted that Plaintiff's claim for mold would not be covered because she had failed to mitigate her losses, and stated that mitigation against mold meant an insured should stop the water from coming into the area. (Phillips Dep. at 78–79.) Defendant now contends that Plaintiff delayed too long in making her claim by hiring a contractor to repair her roof, and a plumber to repair the problem with her dishwasher. Under this reasoning, if an insured suffered damage and failed to call a contractor immediately for repair she would be precluded from recovery for failure to mitigate her damages. On the other hand, if an insured called immediately for repair prior to making a claim she would be in danger of failing to provide prompt notice.

Plaintiff has presented sufficient evidence to create a genuine issue of material fact on coverage under the policy. First, Plaintiff has presented evidence that she experienced at least one instance of water damage that was covered under the policy. Additionally, Defendant, through its claims adjuster, Phillips, visited Plaintiff's house on one occasion, inspected four instances of water damage and agreed that one of the leaks was covered under the policy. (Smith letter at 2; Phillips Dep. at 75.) Finally, Phillips conducted an almost cursory examination. Her inspection was limited to visual observation and Plaintiff's statements. While she stated that she did not notice mold on the foyer ceiling, she did not conduct any further investigation such as determining the source of the leak, looking inside the walls, or anything more than looking at the damage from inside the house and observing the roof from the ground. (Phillips Dep. at 56.) Therefore, the Court finds that Plaintiff has stated a *prima facie* claim for coverage under the policy.

*2. Mold exclusion.* The language of the policy excludes "loss consisting of or caused by ... rust or other corrosion, mold, wet or dry rot." Defendant asserts that this language alone establishes Plaintiff's losses are not covered under the policy. Under the efficient proximate cause doctrine, however, if the mold exclusion combines with a covered risk that is the proximate cause of the loss, then the Plaintiff's losses may be covered. The Court

has already concluded that Plaintiff has made a *prima facie* showing that she has a claim covered under the policy. Likewise, Plaintiff has presented evidence that she has suffered losses due to mold infestation. Moreover, Defendant stated that "if there is a sudden direct physical loss that immediately results in mold, despite the customer's best attempt-and we do enforce the condition of attempt and to mitigate the loss-then we do consider a hygienist and the mediation of the mold." (Phillips Dep. at 78.) Therefore whether Plaintiff's loss is caused by the mold infestation or the water damage is a question of fact to be submitted to a jury. *Kelly,* 281 F.Supp.2d 1290, 1298–99; *see Stephens,* 121 S.E.2d at 840 (finding error where trial judge directed a verdict for the defendant and stated "[w]hile this evidence may be said, in all candor, to have been weak and unconvincing", insofar as it tended to show that the loss was caused by a [covered event], the weight and credit to be given it was solely for the jury under proper instructions from the court). Accordingly, summary judgment is not warranted on Count I.

### B. Breach of implied covenant of good faith and fair dealing

■ Additionally, Defendant contends that where summary judgment is proper on the underlying breach of contract claim, it is also proper on a claim for breach of the implied covenant of good faith and fair dealing.

> It is a well-recognized principle of contract law that both parties are under an implied duty of good faith in carrying out the mutual promises of their contract. A duty of good faith and fair dealing is implied in all contracts in this state. Thus, whenever the cooperation of the promisee is necessary for the performance of the promise, there is a condition implied that the cooperation will be given.

*Whisenant v. Fulton Fed. Sav. & Loan Ass'n,* 200 Ga.App. 31, 406 S.E.2d 793, 795 (1991) (internal citations and quotations omitted). The Court, however, has found the application of the efficient proximate cause doctrine creates a jury question as to the breach of contract issue. Similarly, a jury could conclude that Defendant's refusal to pay for claims it agreed were covered under the policy constitutes a breach of the implied warranty of good faith and fair dealing. Summary judgment is not warranted on Count II.

### C. Unfair claims settlement practices

■ Defendant asserts that Plaintiff cannot recover for unfair claims settlement practices because there is no private right of action for such a claim. *See Rodgers v. St. Paul Fire & Marine Ins. Co.,* 228 Ga.App. 499, 492 S.E.2d 268, 270 (1997) (stating "O.C.G.A. § 33–6–34, regarding unfair insurance claims settlement practices, contains no private cause of action"); O.C.G.A. § 33–6–37. Plaintiff has presented no evidence to support her claim for unfair claims settlement practices. Plaintiff as the non-moving party cannot rely on her pleadings, but must file a response that includes other evidence showing that there is a genuine issue for trial. Fed. R.Civ.P. 56(e); *Combs,* 106 F.3d at 1526 (11th Cir.1997); *Isenbergh,* 97 F.3d at 439 (11th Cir.1996). Plaintiff has not met this burden. Accordingly, summary judgment is warranted on Count III.

### D. Declaratory relief

Defendant moves for summary judgment on Plaintiff's requests for declaratory relief. Because there are questions of fact whether Plaintiff's losses are covered under the policy, summary judgment is not warranted on Count IV.

### E. Bad faith and attorney's fees

█ Defendant moves for summary judgment on Plaintiff's claims for bad faith penalties and attorney's fees. Summary judgment is generally inappropriate prior to the resolution of outstanding discovery issues. *Snook v. Trust Co. of Ga. Bank of Savannah, N.A.,* 859 F.2d 865, 870 (11th Cir.1988). A motion to compel discovery is sufficient to notify the Court that there are outstanding discovery issues. *Reflectone, Inc. v. Farrand Optical Co.,* 862 F.2d 841, 844 (11th Cir.1989); *see* Fed.R.Civ.P. 56(f) (providing court may continue motion for summary judgment to permit discovery upon party's affidavit).

█ In this Court's Order entered April 21, 2003, the Court granted Plaintiff's Motion to Compel as to Defendant's guidelines and manuals and investigatory documents produced prior to December 2, 2001 and permitted Plaintiff to re-depose Jocelyn Phillips and Chris Smith. There, the Court noted that evidence that the insurer failed to follow its own policies and procedures could be relevant as to the insurer's bad faith. Because of the outstanding discovery issues, a decision on summary judgment as to Count V and Count VI would be premature at this time.

### Conclusion

Accordingly, Defendant's Motion for Summary Judgment is hereby **GRANTED in part and DENIED in part**. Defendant's motion is **GRANTED** as to Count III. Defendant's motion is **DENIED** as to Count I, Count II, and Count IV. Defendant's motion is **DENIED with a right to refile** as to Count V and Count VI.