## A99A0009. LARSON et al. v. GEORGIA FARM BUREAU MUTUAL INSURANCE COMPANY.
(520 SE2d 45)

RUFFIN, Judge.

Georgia Farm Bureau Mutual Insurance Company ("Georgia Farm") filed a declaratory judgment action against several parties, including Eric Larson, Holly Larson and its insured, William Usher. The trial court granted summary judgment to Georgia Farm, and the Larsons appeal. For reasons which follow, we affirm.

We conduct a de novo review of a trial court's grant of summary judgment. *Southern Gen. Ins. Co. v. Ross*, 227 Ga. App. 191, 192 (489 SE2d 53) (1997). In so doing, we construe the evidence in favor of the nonmovant to determine if any genuine issue of material fact exists and if the movant is entitled to judgment as a matter of law. Id.

The record reveals that from 1987 through 1994, Usher, an electrical engineer, owned and operated Bushco, Inc., a machine shop and fabrication business. Bushco's business consisted of machine work and building hydraulic and cable lifts for automobiles and motorcycles. Rick Trogett, who is not a party to this litigation, asked Usher to build a cable car system on Trogett's property. Trogett agreed to pay Usher 20 percent over the construction costs for overseeing the project. According to Usher's deposition testimony, he hired subcontractors to perform some of the work and he performed some of it himself. Usher testified that Bushco employees were involved in the fabrication of the cable car. Bushco bought the cable used for the project, and the workers were paid through Bushco's account.

Trogett subsequently sold his property to Robert Berto. On September 14, 1996, Eric Larson, an invitee on Berto's property, was injured when the cable car in which he was riding broke. Eric and Holly Larson filed suit against multiple parties, including Usher and Bushco, seeking damages for injuries sustained as a result of Usher's negligent design, manufacture, and construction of the cable car system.

Usher never had an insurance policy for Bushco. He did, however, have a homeowner's policy through Georgia Farm that insured Usher against suits brought against him for bodily injury. Usher sought coverage under this policy for the Larsons' claims. Georgia Farm then brought this action for a declaratory judgment that the "business pursuits" exclusion rendered its policy inapplicable to the Larsons' claims. The trial court granted summary judgment to Georgia Farm, holding that coverage was barred by the business pursuits exclusion. The Larsons appeal, contending that Usher did not manufacture the cable car system as part of his principal business and, thus, the exclusion should not apply. Contrary to the Larsons' conten-

tions, the trial court correctly granted summary judgment to Georgia Farm.

When the language in an insurance policy is clear, the "policy is interpreted according to its plain language and express terms, just as any other contract." *Alewine v. Horace Mann Ins. Co.*, 197 Ga. App. 479, 480 (398 SE2d 756) (1990). The words used in the policy are to be given their usual and common significance and are to be construed in their ordinary meaning. *Nat. Union Fire Ins. Co. &c. v. Prestige Helicopters*, 217 Ga. App. 375, 376-377 (457 SE2d 587) (1995).

In this case, the policy excludes from coverage any bodily injury or property damage "arising out of business pursuits of an insured." Although the policy does not define "business pursuits," it does define "business" to include "trade, profession or occupation." In determining the meaning of these words,

> [d]ictionaries supply the plain, ordinary, and popular sense. Webster's New International Dictionary (3d ed.) provides these definitions: Trade is the business one practices or the work in which one engages regularly. Profession is a principal calling, vocation, or employment. Occupation means the principal business of one's life. Business is defined in part as follows: . . . b: (1): a usual commercial or mercantile activity customarily engaged in as a means of livelihood and typically involving some independence of judgment and power of decision . . . (4): transactions, dealings or intercourse of any nature . . . but now especially economic.

(Citation and punctuation omitted.) *Brown v. Peninsular Fire Ins. Co.*, 171 Ga. App. 507, 508 (320 SE2d 208) (1984).

Appellants argue that Usher's "business" consisted of building cable lifts for automobiles and motorcycles. Accordingly, appellants maintain that, in building the cable car system, Usher was not engaged in a business pursuit and, thus, the exclusion should not apply. We disagree.

Appellants define "business" too narrowly. Here, the record demonstrates that Usher, an engineer, owned and operated what he described as a "machine shop" and "fabrication business." He primarily built lifts for motorcycles and automobiles. As there apparently is not a great demand for cable car systems, Usher built only one. However, he engineered the system, built it, and was paid for his efforts. At the time he did so, his principal vocation consisted of machine work and building lifts. Accordingly, Usher was engaged in business within the meaning of the policy when he built the cable car system.

The cases cited by appellants do not require a different result. In

*Southern Guaranty Ins. Co. v. Duncan,* 131 Ga. App. 761, 763-764 (2) (131 SE2d 761) (1974), this Court concluded that a "business pursuits" exclusion in a homeowner's policy did not apply to an incident arising from a mechanic's part-time auto racing interest. Although the mechanic potentially could have earned prize money from his auto racing hobby, he was employed full-time elsewhere. Accordingly, this Court ruled that the underlying incident did not result from the insured's business pursuits. Id.

In *Brown,* supra, a real estate broker purchased property for development purposes and hired a contracting company to grade the property. The contracting company sued the broker for damage to its bulldozer, and the broker sought coverage under his homeowner's policy. This Court concluded that the "business pursuits" exclusion in the broker's homeowner's policy did not bar coverage because, as a real estate salesman, the broker was not "customarily engaged in property development." (Punctuation omitted.) Id. at 509. Thus, this Court focused on the nature of the policyholder's usual business.

Here, Usher's usual business consisted of constructing lifts. Although building a cable car lift may not be identical to building an automobile lift, there is a logical nexus between the two. If Bushco had built the cable car system, there would be no doubt that the business pursuits exclusion would bar coverage. We see no reason for a different result simply because Usher handled the project individually. The fact that Usher did not require a signed contract from Trogett, whom he described as a "good friend of a friend," does not render the project either a hobby or a non-business pursuit. Furthermore, Bushco did play at least some role in building the cable car system. According to Usher, some of the checks issued by Trogett were made payable to Bushco. Additionally, Bushco employees assisted in the fabrication of the cable car itself. Accordingly, the trial court correctly concluded that the construction of the cable car system was a "business pursuit."

*Judgment affirmed. McMurray, P. J., and Andrews, J., concur.*

DECIDED JUNE 25, 1999.

*Cole, Bryman, Clerke & Young, Michael A. Cole, David N. Bryman,* for appellants.

*Downey & Cleveland, Tara M. Waller,* for appellee.