## A00A2252. GEORGIA FARM BUREAU MUTUAL INSURANCE COMPANY v. GASTER et al.
### (546 SE2d 30)

MILLER, Judge.

Georgia Farm Bureau Mutual Insurance Company issued a homeowner's insurance policy to Bonnie Gaster. Albert F. Weis fell and was injured in Gaster's home. Weis sued Gaster for damages, and Gaster demanded that Georgia Farm Bureau defend her under the homeowner's policy. Claiming that Weis's injuries came within the policy's business pursuits exclusion clause, Georgia Farm Bureau brought this action seeking a declaration that it had no duty to defend Gaster against Weis's claim. The trial court denied Georgia Farm Bureau's motion for summary judgment and awarded summary judgment to Gaster and Weis sua sponte. Georgia Farm Bureau appeals. Since Weis's injury falls under an exception to the policy's business pursuits exclusion, we affirm.

We conduct a de novo review of a trial court's grant of summary judgment.[1] In so doing, we construe the evidence in favor of Georgia Farm Bureau to determine if any genuine issue of material fact exists and if Gaster and Weis are entitled to judgment as a matter of law.[2] A trial court may grant summary judgment sua sponte so long as the grant is proper in all other respects, particularly the opportunity to be heard.[3] Here the determinative issue was argued at length by both parties.

Under Georgia law, contracts of insurance are interpreted by ordinary rules of contract construction.[4]

> Three well known rules . . . apply. Any ambiguities in the contract are strictly construed against the insurer as drafter of the document; any exclusion from coverage sought to be

---

[1] *Southern Gen. Ins. Co. v. Ross,* 227 Ga. App. 191, 192 (489 SE2d 53) (1997).

[2] Id.

[3] *Plantation Pipeline Co. v. Royal Indem. Co.,* 245 Ga. App. 23, 29-30 (4) (537 SE2d 165) (2000).

[4] *Park 'N Go of Ga. v. U. S. Fidelity &c. Co.,* 266 Ga. 787, 791 (471 SE2d 500) (1996).

invoked by the insurer is likewise strictly construed; and insurance contracts are to be read in accordance with the reasonable expectations of the insured where possible.[5]

Where the terms are clear and unambiguous and capable of only one reasonable interpretation, the court is to look to the contract alone to ascertain the parties' intent.[6] The contract is to be considered as a whole, and each provision is to be given effect and interpreted so as to harmonize with the others.[7]

Georgia Farm Bureau's homeowner's insurance policy excludes coverage for bodily injury or property damage "arising out of business pursuits of an insured." The exclusion does not apply to "activities which are usual to non-business pursuits." The policy defines "business" to include a "trade, profession or occupation."

The record shows that Gaster worked as a realtor. She had an office in an upstairs bedroom in her home. She also maintained a separate office, and there were no signs outside the house indicating it was a place of business. Gaster normally presented offers to clients in their homes, but would occasionally meet with them at her residence. Gaster learned that Weis had property for sale, and she contacted him. On or about February 27 or 28, 1997, Weis came to Gaster's house in order to pick up an offer on the property. Gaster had volunteered to go by Weis's residence, but Weis suggested that he stop by Gaster's home because he planned to be in the area.

Weis read through the documents while seated at Gaster's dining room table. Gaster then went upstairs to her office to make copies of the papers. While Gaster was making copies, Weis got up from the dining room table to look around. He decided to go look out a window and fell on the step leading down into the sunken living room. Weis claims the step was negligently maintained.

Georgia Farm Bureau argues that because Weis came to Gaster's home to conduct business that the policy's business pursuits exclusion applies. While we appreciate that but for Gaster's profession as a real estate broker, Weis would not have been in Gaster's home, the analysis does not end there. The policy's business pursuits exclusion does not apply to activities which are "usual to non-business pursuits."

In its ruling the trial court found *Nationwide Mut. Fire Ins. Co. v. Collins*[8] to be instructive. A child burned her hand on the insured

---

[5] (Citations omitted.) *Richards v. Hanover Ins. Co.*, 250 Ga. 613, 615 (1) (299 SE2d 561) (1983).

[6] *Park 'N Go*, supra, 266 Ga. at 791.

[7] *McCann v. Glynn Lumber Co.*, 199 Ga. 669, 674 (34 SE2d 839) (1945).

[8] 136 Ga. App. 671 (222 SE2d 828) (1975).

homeowner's floor furnace grill and sued for damages.[9] The child was in the home under an arrangement where her parents paid the homeowner $5 a day to care for her.[10] The insurer brought a declaratory judgment action seeking a judgment that it owed no defense to the homeowner under the policy's business pursuits exclusion clause.[11] We held that the business pursuits exclusion provision did not apply because "babysitting for pinmoney" was not a commercial business.[12] But we also noted that the policy did not apply to acts ordinarily incident to nonbusiness pursuits and the maintenance of heat by a floor furnace was an activity ordinarily incident to a nonbusiness pursuit.

*Collins* was revisited in *Alewine v. Horace Mann Ins. Co.*,[13] where we commented that "[p]roviding heat for a home in which a babysitter keeps children is clearly 'non-business in nature,' in that the home would be heated whether or not baby-sitting activities were pursued."[14] Similarly, the maintenance of residential premises is an activity usual and incident to home ownership, a nonbusiness pursuit. Clearly, the maintenance of Gaster's step down into her living room would occur whether or not her real estate activities were being pursued.

Georgia Farm Bureau argues that to apply the policy's nonbusiness pursuits exception here would be to interpret it so broadly as to render the business pursuits exclusion wholly ineffective. By example, they note that Weis's act of walking could be considered usual to a nonbusiness pursuit in almost every situation. But Georgia Farm Bureau focuses on Weis's action instead of the relationship between the injury and Gaster's maintenance of the premises. Gaster's maintenance of the residential premises was a normal nonbusiness activity.

In the authorities cited by Georgia Farm Bureau, the instrumentality of the injury in question was directly connected to the insured's business pursuits activities, and so are not persuasive.[15] The trial

---

[9] Id. at 671-672.

[10] Id. at 672.

[11] Id.

[12] Id. at 674.

[13] 197 Ga. App. 479 (398 SE2d 756) (1990).

[14] Id. at 481.

[15] *Larson v. Ga. Farm &c. Ins. Co.*, 238 Ga. App. 674 (520 SE2d 45) (1999) (injury occurred on a cable car system that insured had been paid to construct on another's property); *Alewine*, supra, 197 Ga. App. at 479 (the source of the injury was traced to the failure of a fence to enclose cattle, and the raising of cattle was a business); *Dixon v. Midland Ins. Co.*, 168 Ga. App. 319 (309 SE2d 147) (1983) (the injury alleged was malicious prosecution, but the prosecution in question could be traced to a sale of a truck by the insured); *Davis v. Frederick's, Inc.*, 30 Utah.2d 321 (517 P2d 1014) (1973) (the insured injured a passerby when he opened the door to his workplace); *Martinelli v. Security Ins. Co. of New Haven*, 490 SW2d

court did not err in granting summary judgment to Gaster and Weis.
*Judgment affirmed. Pope, P. J., and Mikell, J., concur.*

DECIDED FEBRUARY 22, 2001.

*Brennan, Harris & Rominger, Mason White, James D. Kreyenbuhl,* for appellant.
*Barrow & Sims, R. Stephen Sims, John G. Hunter,* for appellees.

427 (Mo. App. 1973) (the insured walked into another employee at their mutual place of work, injuring him).