A04A0436. CUNNINGHAM v. MIDDLE GEORGIA MUTUAL INSURANCE COMPANY.

(601 SE2d 382)

Ruffin, Presiding Judge.

Middle Georgia Mutual Insurance Company (Middle Georgia) issued a homeowner's liability insurance policy to Glynn Cunningham, who allegedly caused a fire at a friend's rental property while repairing the roof. After Middle Georgia denied the claim, Cunningham filed a declaratory judgment action, seeking judicial determination of coverage under the policy. The parties filed cross-motions for summary judgment, and the trial court granted Middle Georgia's motion and denied Cunningham's. In several enumerations of error, Cunningham appeals. For reasons that follow, we reverse.

In reviewing the grant or denial of a motion for summary judgment, we conduct a de novo review of the evidence.[1] To prevail on summary judgment, the moving party must show that there is no genuine issue of material fact and that the evidence, viewed in a light most favorable to the nonmoving party, warrants judgment as a matter of law.[2]

Viewed in this light, the record shows that in 1997, Cunningham was employed as a roofing crew supervisor and quality control inspector for a roofing company. Although Cunningham did not ordinarily perform the actual roofing, he would fill in as a laborer as the need arose. In addition, Cunningham did roofing work for C. R. Tidwell, Cunningham's former pastor. According to Cunningham, he did this work as a favor and generally did not charge Tidwell for his time or expense.

In March 1997, Tidwell contacted Cunningham about a leak at a rental property Tidwell owned. Cunningham estimated that another

---

[1] See *Tripp v. Allstate Ins. Co.*, 262 Ga. App. 93, 94 (584 SE2d 692) (2003).
[2] See id.

roofer would charge $1,200 to repair the roof, but Cunningham agreed to do the work for $500. According to Cunningham's affidavit, this amount covered his expenses. On deposition, however, Cunningham conceded that it actually cost him only $350 to $400 in expenses to perform the work and that, if he were paid, he would profit somewhat.

Cunningham went to Tidwell's rental property to work on the roof. Part of the job entailed using a propane blow torch to heat roofing material. After completing the job, Cunningham cleaned up the job site. He then went home. Several hours later, Cunningham learned that there had been a fire at the rental property that started in the attic, adjacent to where he had been using the blow torch. According to Cunningham, there was no sign of fire while he was there, and he remained on the job site for 45 minutes after completing the blow torch work. Nonetheless, on March 12, 1997, the local paper ran an article blaming him for starting the fire. Tidwell never paid Cunningham for the work.

In May 1999, State Farm Insurance Company, which insured Tidwell and his renter, filed suit against Cunningham for negligently causing the fire. Cunningham then sought coverage from his own insurance company, Middle Georgia, which denied the claim.

After Cunningham petitioned for declaratory judgment, Middle Georgia moved for summary judgment, arguing that the policy at issue expressly excludes coverage for "business pursuits" and for "rendering or failure to render professional services." Middle Georgia also asserted that Cunningham failed to timely notify it of the claim. Cunningham responded, asserting that since he did the roofing job as a favor, it did not constitute a business pursuit. He further maintained that roofing could not be considered a "profession" within the meaning of the professional services exclusion and that he timely provided notice of his claim. Cunningham also filed a cross-motion for summary judgment, arguing that as a matter of law Middle Georgia had a duty to provide a legal defense. The trial court granted Middle Georgia's motion and denied Cunningham's. In multiple enumerations of error, Cunningham challenges this ruling.

1. As a threshold matter, we must determine whether the trial court erred in considering Cunningham's deposition testimony. According to Cunningham, Middle Georgia never filed the transcript with the court, and "[a]ssertions of fact made in briefs not supported by the record are not considered."[3] However, it appears from the record that the deposition transcript was filed with the court in December 2002, several months before the trial court issued its

---

ruling. Thus the evidence was before the trial court, and this Court may consider it on appeal.[4]

2. Cunningham argues the trial court erred in concluding that the roofing job he engaged in was a business pursuit rather than a favor. We agree.

"[I]n Georgia, insurance is a matter of contract, and the parties to an insurance policy are bound by its plain and unambiguous terms."[5] "Under the rules of contract construction, the policy is construed against the insurer as the drafter of the policy and any exclusions from coverage are strictly construed."[6]

Cunningham's policy expressly excludes from coverage "property damage . . . arising out of business pursuits of an insured." The policy defines "business" as "trade, profession or occupation." As this Court has held,

> [i]n determining the meaning of these words, dictionaries supply the plain, ordinary, and popular sense. Webster's [Dictionary] provides these definitions: Trade is the business one practices or the work in which one engages regularly. Profession is a principal calling, vocation, or employment. Occupation means the principal business of one's life. Business is defined in part as follows: . . . (1): a usual commercial or mercantile activity customarily engaged in as a means of livelihood and typically involving some independence of judgment and power of decision . . . (4): transactions, dealings or intercourse of any nature but now especially economic.[7]

This Court has had several opportunities to address whether an insured's activity falls within a "business pursuits" exclusion in a policy. In *Southern Guaranty Ins. Co. v. Duncan,*[8] this Court concluded that such exclusion did not apply to an incident arising from a mechanic's part-time racing interest. Although the mechanic potentially could have earned prize money, he was employed full time elsewhere, and we thus found that the underlying interest did not stem from a business pursuit.

---

[4] See id. at 805 (1).

[5] (Punctuation omitted.) *Old Republic Union Ins. Co. v. Floyd Beasley & Sons,* 250 Ga. App. 673, 675 (2) (551 SE2d 388) (2001).

[6] (Punctuation and footnote omitted.) *Pilz v. Monticello Ins. Co.,* 267 Ga. App. 370-371 (599 SE2d 220) (2004).

[7] (Citation and punctuation omitted.) *Larson v. Ga. Farm &c. Ins. Co.,* 238 Ga. App. 674, 675 (520 SE2d 45) (1999).

[8] 131 Ga. App. 761, 763-764 (2) (206 SE2d 672) (1974).

In *Brown v. Peninsular Fire Ins. Co.,*[9] a real estate broker purchased property for development purposes and hired a contracting company to grade the property. The bulldozer was damaged while grading the property, and the contracting company sued the broker, who sought coverage under his homeowner's policy. Again, this Court found that the activity did not fall within a "business pursuits" exclusion because the broker was not "customarily engaged in property development."[10]

Finally, in *Larson v. Georgia Farm Bureau Mut. Ins. Co.,*[11] we addressed whether an engineer's activity in building a cable car system fell within a "business pursuits" exclusion. Given that the engineer owned and operated a machine shop in which he built lifts and that the engineer was compensated for his effort, we found that it constituted a business pursuit and thus was not covered by the engineer's homeowner's policy.[12]

Here, the record shows that Cunningham worked in the roofing business when he repaired the roof on Tidwell's property. However, Cunningham worked as a supervisor and quality control inspector, and his daily tasks generally did not involve manual labor. Thus, Cunningham was not "customarily engaged in [actual roofing] as his usual commercial or mercantile activity."[13] And at the time of the incident, Cunningham was performing the roofing work as a favor for his former pastor. Although Cunningham asked Tidwell to pay $500, Cunningham sought such payment to cover expenses. If Cunningham had been paid, he would have made a slight profit. But the mere possibility of financial gain is not dispositive.[14]

Under these circumstances, we find the scenario here more akin to those in *Brown*[15] and *Southern Guaranty*,[16] rather than *Larson*.[17] It follows that the trial court erred in concluding that Cunningham's activity fell within the "business pursuits" exclusion as a matter of law.[18]

3. Similarly, we find the "professional services" exclusion inapplicable. Under the terms of the policy, coverage does not apply to property damage "arising out of the rendering of or failure to render

---

[9] 171 Ga. App. 507 (320 SE2d 208) (1984).

[10] (Punctuation omitted.) Id. at 509.

[11] Supra.

[12] See id. at 675-676.

[13] (Punctuation omitted.) *Brown*, supra at 509.

[14] See id.

[15] Supra.

[16] Supra.

[17] Supra.

[18] See *Brown*, supra; *Southern Guaranty*, supra.

professional services." According to Cunningham, roofing is not a "profession" within the meaning of the policy.

In resolving this issue, we apply the rule that any exclusion from coverage sought to be invoked by the insurer is to be strictly construed.[19] And in construing the contract, we look to the policy as a whole, "and each provision is to be given effect and interpreted so as to harmonize with the others."[20] "It is the understanding of the average policyholder which is to be accepted as a court's guide to the meaning of words, with the help of the established rule that ambiguities and uncertainties are to be resolved against the insurance company."[21]

Here, the parties dispute the breadth to be given the word "profession." Cunningham essentially argues that this word connotes a learned occupation, such as doctor or lawyer. Middle Georgia, on the other hand, argues the word is synonymous with one's business or livelihood. The policy language, however, undermines Middle Georgia's argument. Although the policy does not define "profession," it does define "business" as "includ[ing] trade, profession or occupation." Thus, profession is a subset of business, such that the two terms should not be considered synonymous. Moreover, by specifically excluding "professional services" from coverage, the policy itself suggests that this term differs from mere "business pursuits."[22] Here, roofing is reasonably understood as a trade or occupation rather than a profession. It follows that this exclusion should not bar coverage.

4. According to Middle Georgia, Cunningham's failure to provide timely notice of the claim as required by the policy was unreasonable as a matter of law, thus barring coverage. Specifically, Middle Georgia argues that the newspaper article that blamed Cunningham for the fire triggered his obligation to notify his insurer. We disagree.

"In general, the question of whether an insured gave notice of an event or occurrence 'as soon as practicable,' as required by a policy of insurance, is a question for the factfinder."[23] Here — assuming that the existence of the newspaper article is even relevant to the issue of notice — we note that nothing in the article indicated that State Farm planned to sue Cunningham. When State Farm eventually contacted

---

[19] See *Pilz*, supra.

[20] (Footnote omitted.) *Georgia Farm Bureau Mut. Ins. Co. v. Gaster*, 248 Ga. App. 198, 199 (546 SE2d 30) (2001).

[21] (Punctuation omitted.) *Brown*, supra at 508.

[22] See id. at 509 (provision excluding coverage for "rental or holding for rental" property undermines contention that property owned for profit necessarily falls within "business pursuits" exclusion).

[23] *Plantation Pipeline Co. v. Royal Indem. Co.*, 245 Ga. App. 23, 25 (1) (537 SE2d 165) (2000).

Cunningham regarding a possible claim in October 1997, Cunningham notified Middle Georgia of the claim that same month. Under these circumstances, we cannot say that any delay in notifying the insurer was unreasonable as a matter of law.[24]

5. Finally, Cunningham contends that the trial court erred in concluding that Middle Georgia had no duty to defend him. Again, we agree. "The duty to defend is excused only when a complaint unambiguously excludes coverage under the policy, and thus, the duty to defend exists if the claim potentially comes within the policy."[25] In view of our holding that coverage is not excluded, it follows that Middle Georgia has a duty to defend Cunningham.

*Judgment reversed. Eldridge and Adams, JJ., concur.*

DECIDED JUNE 16, 2004 —
RECONSIDERATION DENIED JUNE 29, 2004 — ▮▮▮▮▮▮▮

*George C. Creal, Jr.*, for appellant.
*Richard L. Collier*, for appellee.

---

[24] See *Continental Cas. Co. v. Parker*, 161 Ga. App. 614, 617-618 (2) (288 SE2d 776) (1982).
[25] *Nationwide Mut. Fire Ins. Co. v. Somers*, 264 Ga. App. 421, 425 (2) (591 SE2d 430) (2003).