Timothy C. Batten, Sr., United States District Judge
This case comes before the Court on Defendant State Farm Fire and Casualty Company's motion [14] for summary judgment on all counts and Plaintiffs' cross motion [17] for partial summary judgment on their breach of contract claim (Count I).
I. Background
This is a dispute about insurance coverage. The material facts set forth below are not in dispute.[1] See [17-1] at 1.[2]
*1276 Plaintiffs have an insurance policy with State Farm (Policy No. 11-NT-6136-5). The policy provides coverage for "accidental direct physical loss" to Plaintiffs' home, with certain exclusions. [14-1] ¶ 2. The pertinent exclusion states:
We do not insure for any loss to the property ... which consists of, or is directly and immediately caused by ... n. pressure from or presence of tree, shrub or plant roots.
[14-2] ¶ 3 (emphasis added) (quoting [14-1] at 41-42).
On November 11, 2015, water overflowed from a toilet on the main level of Plaintiffs' residence and caused extensive damage. A plant root had worked its way into the toilet piping and clogged it, causing an overflow. This incident resulted in the loss for which Plaintiffs seek coverage in this case.
Plaintiffs submitted a claim to State Farm the same day. Later, on December 22, State Farm denied the claim, citing the root exclusion. Plaintiffs then sued State Farm for breach of contract (Count I) and diminution of value (Count II) in state court, alleging that under the policy water, not roots, was the "direct and immediate cause" of the damage. State Farm timely removed the action to this Court, and both parties have moved for summary judgment. State Farm moves for summary judgment on Counts I and II. Plaintiffs cross-move for summary judgment on Count I. Each count is taken in turn.
II. Legal Standard
A. Summary Judgment
Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). There is a "genuine" dispute as to a material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." FindWhat Inv'r Grp. v. FindWhat.com , 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ). In making this determination, however, "a court may not weigh conflicting evidence or make credibility determinations of its own." Id. Instead, the court must "view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." Id.
"The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact." Id. (citing Celotex Corp. v. Catrett , 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ). If the nonmoving party would have the burden of proof at trial, there are two ways for the moving party to satisfy this initial burden. United States v. Four Parcels of Real Prop. , 941 F.2d 1428, 1437-38 (11th Cir. 1991). The first is to produce "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." Id. at 1438 (citing Celotex Corp. , 477 U.S. at 331, 106 S.Ct. 2548 ). The second is to show that "there is an absence of evidence to support the nonmoving party's case." Id. (quoting Celotex Corp. , 477 U.S. at 325, 106 S.Ct. 2548 ).
If the moving party satisfies its burden by either method, the burden shifts to the nonmoving party to show that a genuine issue remains for trial. Id. At this point, the nonmoving party must " 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue *1277 for trial." Jeffery v. Sarasota White Sox, Inc. , 64 F.3d 590, 593-94 (11th Cir. 1995) (quoting Celotex Corp. , 477 U.S. at 324, 106 S.Ct. 2548 ).
B. Contract Interpretation
The parties do not dispute that the policy is governed by Georgia law. In Georgia, the interpretation of an insurance policy is a question of law for the Court. O.C.G.A. § 13-2-1.
"[T]he cardinal rule of contract construction is to ascertain the intention of the parties." Garrett v. S. Health Corp. of Ellijay, Inc. , 320 Ga.App. 176, 739 S.E.2d 661, 667 (2013) (alteration in original) (quoting Bd. of Comm'rs of Crisp Cty. v. City Comm'rs of Cordele , 315 Ga.App. 696, 727 S.E.2d 524, 527 (2012) ).
"Where the terms are clear and unambiguous, and capable of only one reasonable interpretation, the court is to look to the contract alone to ascertain the parties' intent." Boardman Petroleum, Inc. v. Federated Mut. Ins. Co. , 269 Ga. 326, 498 S.E.2d 492, 494 (1998). "[N]o construction is required or even permitted when the language employed by the parties in the contract is plain, unambiguous, and capable of only one reasonable interpretation." Shepherd v. Greer, Klosic & Daugherty , 325 Ga.App. 188, 750 S.E.2d 463, 465 (2013) (alteration in original omitted) (quoting Homelife Cmtys. Grp. v. Rosebud Park, LLC , 280 Ga.App. 120, 633 S.E.2d 423, 425 (2006) ).
Courts interpreting insurance policies under Georgia law should also ascertain the parties' intention by examining the contract as a whole. Ryan v. State Farm Mut. Auto. Ins. Co. , 261 Ga. 869, 413 S.E.2d 705, 707 (1992). The terms of an insurance contract should be considered in light of their legal and ordinary meaning, id. , and the policy "should be read as a layman would read it," York Ins. Co. v. Williams Seafood of Albany, Inc. , 273 Ga. 710, 544 S.E.2d 156, 157 (2001). "[T]he plain meaning of [unambiguous] terms must be given full effect, regardless of whether they might be beneficial to the insurer or detrimental to the insured." Tripp v. Allstate Ins. Co. , 262 Ga.App. 93, 584 S.E.2d 692, 694 (2003) (quoting Grain Dealers Mut. Ins. Co. v. Pat's Rentals , 269 Ga. 691, 505 S.E.2d 729, 730 (1998) ).
If the Court finds the language to be ambiguous, several well-worn rules must be kept in mind. "Any ambiguities in the contract are strictly construed against the insurer as drafter of the document; any exclusion from coverage sought to be invoked by the insurer is likewise strictly construed; and insurance contracts are to be read in accordance with the reasonable expectations of the insured where possible." Ga. Farm Bureau Mut. Ins. Co. v. Gaster , 248 Ga.App. 198, 546 S.E.2d 30, 31 (2001) (citations omitted in original) (quoting Richards v. Hanover Ins. Co. , 250 Ga. 613, 299 S.E.2d 561, 563 (1983) ). If the ambiguity cannot be resolved by applying the canons of construction, "the issue of what the ambiguous language means and what the parties intended must be resolved by the [fact finder]." Inland Atl. Old Nat'l Phase I, LLC v. 6425 Old Nat'l, LLC , 329 Ga.App. 671, 766 S.E.2d 86, 92 (2014).
III. Discussion
A. Summary Judgment-Breach of Contract (Count I)
"The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." SAWS at Seven Hills, LLC v. Forestar Realty, Inc. , 342 Ga.App. 780, 805 S.E.2d 270, 274 (2017)
*1278 (quoting Dewrell Sacks, LLP v. Chi. Title Ins. Co. , 324 Ga.App. 219, 749 S.E.2d 802, 806 (2013) ). Elements one and two are in dispute. The Court begins with the issue of breach.
1. Element One-Breach
The question of whether State Farm breached the policy boils down to this: whether Plaintiffs' loss was "directly and immediately caused by ... pressure from or presence of tree, shrub, or plant roots ." [14-1] at 41-42 (emphasis added). If it was not, as Plaintiffs argue, then State Farm breached the contract by failing to provide coverage for the water damage.
State Farm contends that the damage to Plaintiffs' home, though resulting from water, was excluded from coverage because it was directly and immediately caused by roots blocking the flow of water. Plaintiffs contend otherwise, that the direct and immediate cause of the damage was not roots, but rather the backed-up water from a toilet. The roots were admittedly a remote cause of their loss, but not the direct and immediate cause as provided in the policy. Thus, the Court must define what a "direct and immediate cause" is.
To begin, the Court holds that the policy language in this respect is unambiguous. As this Court has put it before, when "examining the contract as a whole and affording the words used therein their plain and ordinary meaning, the contract is capable of only one reasonable interpretation." Rosen v. Protective Life Ins. Co. , 817 F.Supp.2d 1357, 1370 (N.D. Ga. 2011) (quoting Gen. Steel, Inc. v. Delta Bldg. Sys., Inc. , 297 Ga.App. 136, 676 S.E.2d 451, 453-54 (2009) ).
The dispute in this case is not about what "direct" or "immediate" or "cause" necessarily means. Or about what they mean when taken together. The meanings are plainly ascertainable. Instead, the issue is what results when the facts of this case are filtered through this contract language. In other words, the dispute here is the application of unambiguous language to the facts before the Court. Accordingly, the Court need not resort to canons of construction.[3]
It must still, however, define the terms with which it is dealing. When defining contract language-even unambiguous language-the Court looks to dictionaries "because they supply the plain, ordinary, and popular sense unless the words are terms of art." Lyons v. Allstate Ins. Co. , 996 F.Supp.2d 1316, 1320 (N.D. Ga. 2014) (quoting W. Pac. Mut. Ins. Co. v. Davies , 267 Ga.App. 675, 601 S.E.2d 363, 367 (2004) ). This is especially true when the contract lacks its own definitions. See id.
Dictionaries are especially useful here because the parties have chosen to modify the word "cause" for purposes of State Farm's coverage obligations. The parties' deliberate choice shows an intent to exclude from coverage only a certain type of cause, i.e., that which is both "direct" and "immediate." Now on to the definitions.
"Direct" when used here is most appropriately defined as "3. Having no intervening persons, conditions, or agencies[.]" Direct , THE AMERICAN HERITAGE DICTIONARY (5th ed. 2016). It is synonymous with the word "immediate." Id. "Immediate" is best defined as "5. Acting or occurring without the interposition of another agency or object" and also synonymous with the word "direct." Immediate , THE AMERICAN HERI
*1279 TAGE DICTIONARY . Finally, "cause" is defined as the "producer of an effect, result, or consequence." Cause , THE AMERICAN HERITAGE DICTIONARY . Thus, a direct and immediate cause of a certain effect is one that produces that effect without any intervening acts, agencies,[4] or events.
This is consistent with the way other courts have defined similar language. When there is a chain of events leading to a loss, as here, a direct and immediate cause has been defined as the one nearest in time to the specific event at issue. This is contrasted with proximate cause, which when dealing with a chain of events generally refers to the primary or legal cause for all foreseeable events in the chain.[5] See Bjugan v. State Farm Fire & Cas. Co. , 969 F.Supp.2d 1283, 1292 (D. Or. 2013) ("[B]y not using the 'direct and immediate' language, [this] leaves 'cause' subject to interpretation as the efficient proximate cause. That definition looks back to the cause that started a chain of events, whereas a 'direct and immediate' cause looks back only to the closest cause in time."); Tarleton, LLC v. State Farm Fire & Cas. Co. , No. 3:12-cv-00989-AC, 2014 WL 2126567, at *13 (D. Or. May 21, 2014) (agreeing with Bjugan and concluding that "those causes which ultimately lead to other, more direct and immediate causes are not themselves 'direct and immediate.' ").
The Court now turns to applying this definition. Here, the chain of events giving rise to the disputed loss begins first with *1280 the growth of a root. This initiated the chain of events leading to the ultimate loss (water damage) to Plaintiffs' home. The root grew into the toilet piping, which then clogged. The clogging caused the toilet water to back up, and this backup then damaged the floor. Thus, looking back from the loss, the nearest event in the chain was the toilet overflowing, not the root. Put another way, between the root growth and the loss, the water overflowing from the backed-up commode was an intervening agency or event. True, the root caused the loss. But it did not directly and immediately cause the loss as causation has been defined here. Without the water overflow the root would have only damaged the pipes. In order for the floors to be damaged, something other than just root growth had to occur, i.e., the backup of water.[6] Thus, the backup was an intervening event meaning that the root growth was not excluded from coverage because it was not the "direct and immediate" cause of the water damage.
State Farm cites to Wojciechowski v. State Farm Fire & Casualty Co. , No. 11-566 RMB/AMD, 2012 WL 1623585 (D.N.J. May 8, 2012), in support of its position. But the Court respectfully declines to follow that court's interpretation of similar contract language. In Wojciechowski , the plaintiff-insureds sought to recover from State Farm for water damage caused by wear and tear to a water pipe. The policy excluded coverage for loss that was directly and immediately caused by wear and tear. The plaintiff-insureds argued that the direct and immediate cause of their loss was the water that leaked from the worn-and-torn pipe, rather than the damage from the wear and tear itself. Their argument was essentially that the water leaking from the pipe was an intervening agency or event. The district court rejected this argument, granting State Farm summary judgment. It held that the distinction between the water damage from the leaking, worn-and-torn pipe, and the wear and tear that caused the leaking, was an "empty distinction." Id. at *3.
On the contrary, the distinction is quite palpable because it gives meaning to the words "direct" and "immediate." The parties' choice of language is presumably intentional, and here it reveals an intent to limit excluded causes to those that are "direct" and "immediate." When confronted with a chain of events leading to a loss, only one of the causes in the chain is the "direct and immediate" cause of the loss at issue, regardless of whether a more remote event in the chain is also fairly considered the cause of the ultimate loss. Even if the primary event caused the loss, it is not the direct and immediate cause of every effect in the chain. Otherwise "direct" and "immediate" are left with little meaning.
The problem with the Wojciechowski court's interpretation is that it too closely resembles proximate cause, which would make sense if the policy language referred to "cause" only without modification. It essentially holds that direct and immediate causes are the causes for any effect that is their foreseeable or natural consequence. To adopt this interpretation would effectively read out of the contract the parties' chosen language and would fail to give effect to the entirety of the contract. Cf. White v. Kaminsky , 271 Ga.App. 719, 610 S.E.2d 542, 545 (2004) ("[A] contract must be interpreted to give the greatest effect possible to all provisions rather than to leave any part of the contract unreasonable *1281 or having no effect. And, one of the most fundamental principles of construction is that a court should, if possible, construe a contract so as not to render any of its provisions meaningless. The intention of the parties to a contract is ascertained from the entire contract, considering each provision in connection with the others, and not giving the contract a construction which entirely neutralizes one provision if it is susceptible of another which gives effect to all of its provisions." (quoting Vaughn, Coltrane & Assocs. v. Van Horn Constr., Inc. , 254 Ga.App. 693, 563 S.E.2d 548, 550 (2002) ) ). This is why the Court charts a different path.
In sum, the Court holds that the loss to Plaintiffs' home was directly and immediately caused by water from the backed-up toilet, and not the root (excluding the physical damage caused by the root to the pipe, which was directly and immediately caused by the root). The Court grants that the root was a cause of the loss, but it was not its direct and immediate cause. Thus, the root exclusion does not apply to Plaintiffs' loss. And because State Farm has not disputed that in the absence of the root exclusion the loss would be covered, it breached its contract by failing to provide coverage for the water damage. Its motion for summary judgment must therefore be denied and Plaintiffs' cross motion granted as to breach.
2. Element Two-Damages
This now leaves the issue of damages. Plaintiffs have submitted documentary evidence setting forth an estimate of the damages they sustained as a result of the loss. State Farm contends that this evidence constitutes expert testimony and is inadmissible because it was not properly disclosed. Additionally, State Farm attempts to create a genuine dispute of fact as to damages by submitting evidence from one of its employees estimating a different amount of damages sustained by Plaintiffs. Plaintiffs object to this as unauthenticated testimony because it conflicts with the witness's deposition testimony on the same subject. The Court begins first with State Farm's objections to Plaintiffs' putatively expert evidence.
Plaintiffs rely on an appraisal of their loss that was prepared by Bruce Fredrics, an adjuster with Professional Adjusting & Consulting Service, LLC ("PACS"). The appraisal estimates that Plaintiffs sustained $ 75,681.11 in damages because of State Farm's breach. See [17-1] at 13-14; [17-7] at 37-58. State Farm argues that this evidence is inadmissible because Fredrics is an expert whom Plaintiffs failed to timely disclose under Rule 26(a)(2).
The Court finds that to the extent that the appraisal contains estimates of repairs required and its cost it constitutes expert evidence because it "requires specialized knowledge or technical expertise" possessed by Fredrics by virtue of his occupation as a trained adjuster. Armstead v. Allstate Prop. & Cas. Ins. Co. , 1:14-cv-586-WSD, 2016 WL 928722, at *2 (N.D. Ga. Mar. 11, 2016). Plaintiffs did not disclose Fredrics as an expert witness prior to using his testimony in support of their motion for summary judgment and did not provide or seek an excuse from the requirement of providing an expert report under Rule 26(a)(2)(B).[7]
"When a plaintiff fails to meet a Rule 26(a)(2)(B) disclosure deadline, she must demonstrate her mistake was either justified or harmless."
*1282 Finch v. Owners Ins. Co. , CV 616-169, 2017 WL 6045449, at *3 (S.D.) (citing FED. R. CIV. P. 37(c)(1) ). Though Plaintiffs do not put forward a justification for the nondisclosure, the Court is satisfied that it was ultimately harmless. Plaintiffs released the appraisal in the course of discovery on February 2, 2017. Discovery ended July 31, 2017, meaning State Farm had ample opportunity to depose the witness or examine Plaintiffs' evidence in the course of the proceedings but did not. Therefore, State Farm's objection is overruled, and the Fredrics appraisal will not be excluded.
Now the Court must ascertain whether State Farm's proposed counter-testimony on damages is admissible and creates a genuine dispute of material fact on the issue of damages. Chandra Jackson, one of its claim specialists, estimates Plaintiffs' loss at $ 6,137.54, exclusive of costs of emergency remediation. Jackson relied on an appraisal she prepared regarding the loss to Plaintiffs' home. Plaintiffs argue that State Farm failed to properly authenticate this evidence because Jackson previously testified by deposition on June 20, 2017 that no such estimate was prepared.
This objection is overruled. Federal Rule of Evidence 901(a) requires that an "item of evidence" be authenticated through "evidence sufficient to support a finding that the item is what the proponent claims it is." There is no serious contention that Jackson's estimate is not what it purports to be, that is, an estimate she prepared. Plaintiffs characterize the estimate as one that purports to be contemporaneous to the loss. But Jackson makes no such claim. And while the estimate is undated, there is a date stamp of September 17, 2017 on the document. It is likely, especially in light of Jackson's deposition testimony, that it was created much later than the loss incident. See, e.g. , [20-1] at 39.
Though concerning, these discrepancies do not affect authenticity. Rather, they relate to the evidence's quality, its probative value, or given Jackson's deposition testimony, they create an opportunity for impeachment or undermining Jackson's credibility on cross-examination. But it is not an issue of admissibility resolvable at the summary judgment phase, as issues of credibility are reserved for trial. Anderson , 477 U.S. at 255, 106 S.Ct. 2505 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict."); Reese v. Herbert , 527 F.3d 1253, 1271 (11th Cir. 2008) ("The district court's error compounds itself at this point, for having found that the three affidavits were admissible, it was not for the district court to discount or disregard them at the summary judgment stage based on its assessment of the quality of the evidence.").
Accordingly, Jackson's testimony is admissible and creates a genuine dispute of fact on the material issue of damages in this case. Moreover, the Court notes that issues of damages are generally reserved for a jury's determination. See, e.g. , PMT Inv., LLC v. Giardina Finishing Sys. U.S.A., Inc. , No. 1:06-cv-2249-CAP, 2009 WL 10669943, at *6 (N.D. Ga. Jan. 30, 2009) ; see also Millholland v. Stewart , 166 Ga.App. 431, 304 S.E.2d 533, 535 (1983) ("[Q]uestions of value are peculiarly for the jury."); Reid v. Bryant , 100 Ga.App. 105, 110 S.E.2d 571, 576 (1959) ("The question of the amount of damages is always for the jury...."). Thus, Plaintiffs' and Defendants' motions for summary judgment on Count I as to damages are denied.
B. Summary Judgment-Diminution in Value (Count II)
State Farm also seeks summary judgment on Plaintiffs' claim for diminution of *1283 value. It argues that no such cause of action exists in Georgia, and that even if it did, this type of loss is expressly excluded from the policy. The Court agrees. If anything, this would be a remedy rather than a cause of action. And if it were, it would be expressly excluded by the plain language of the contract.
Moreover, Plaintiffs have not responded to this aspect of State Farm's motion. State Farm's position is therefore considered unopposed, and arguments to the contrary are abandoned. Bute v. Schuller Int'l, Inc. , 998 F.Supp. 1473, 1477 (N.D. Ga. 1998) ("Because plaintiff has failed to respond to th[e] argument or otherwise address th[e] claim, the Court deems it abandoned."); see also Resolution Tr. Corp. v. Dunmar Corp. , 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." (citation omitted) ). Summary judgment is therefore granted to State Farm as to Count II.
IV. Conclusion
State Farm's motion [14] is granted in part and denied in part, and Plaintiffs' partial motion [17] is granted in part and denied in part. State Farm's motion is denied as to Count I, and Plaintiffs' motion is granted as to Count I for breach and denied for damages. State Farm's motion is granted as to Count II.
In hopes of heading off further disputes regarding the admissibility of evidence related to damages, the Court will entertain a proposal from the parties-after certifying they have met and conferred-for a period of limited discovery not to exceed sixty days on damages only. The parties should submit this proposal by September 28, 2018.
Should they elect to forego discovery on this issue, this case will be set for trial on the issue of damages as to Count I.
IT IS SO ORDERED this 18th day of September, 2018.

The only material dispute, as the Court explains infra , relates to the amount of loss Plaintiffs suffered.

Page references refer to page numbers in the CM/ECF PDF document reader, rather than the page numbers on the copies of the documents themselves.

If the language were ambiguous, the outcome would still be the same. Exclusions such as those at issue here are "strictly construed," and any ambiguities would be construed in favor of Plaintiffs as the insureds. See Travelers Indem. Co. v. Whalley Constr. Co. , 160 Ga.App. 438, 287 S.E.2d 226, 229 (1981).

"Agency" is defined as a "means or mode of acting; instrumentality." Agency , The American Heritage Dictionary . To the extent that it could be an issue, the water overflow in this case is certainly capable of being an instrumentality for action. It is also capable of being the producer of an effect, and therefore, a "cause."

A general legal understanding of the word "cause" evokes tort notions of proximate cause. That is, those causes that are "legally sufficient to result in liability[.]" Proximate Cause , Black's Law Dictionary (10th ed. 2014). In the contractual context, damages caused by a breach are considered to be those that "are the natural and proximate causes of the breach" and "those actually sustained as the direct and necessary result of the breach of contract." Ga. R.R. v. Hayden , 71 Ga. 518, 522 (1883). This sounds a lot like proximate causation. After all, proximate causation generally involves some measure of foreseeability. Cf. Ollis v. Shulkin , 857 F.3d 1338, 1344 (Fed. Cir. 2017) ("As the Supreme Court has recognized, a hallmark formulation of proximate cause defines its scope in terms of foreseeability, extending only to those foreseeable risks created by the negligent conduct."). And maybe, if the parties had referred just to "cause" to define State Farm's obligations for insurance coverage, reference to these notions of proximate cause would be appropriate to apply to this case. But the parties have not. Instead, they have chosen a specific type of cause that triggers a coverage exclusion: "direct and immediate" causes. This has legal significance in a contract case because the Court's role is only to apply the parties' contract as written, rather than supplying its own or the community's definition of the words they have used (unless, of course, that was their intent). And even though the parties have not made such arguments, the Court also considers that this specific linguistic choice likely precludes the application of principles of efficient proximate causation. Cf. Burgess v. Allstate Ins. Co. , 334 F.Supp.2d 1351, 1361-62 (N.D. Ga. 2003).
Courts must be wary of conflating contract and tort cases. Tort law is concerned with the vindication of private rights against certain publicly defined wrongs. Contract law, on the other hand, is concerned with the vindication of private rights against privately defined wrongs. See First State Bank of Monticello v. Ohio Cas. Ins. Co. , 555 F.3d 564, 570 (7th Cir. 2009) ("Insurance-coverage cases are not concerned with the philosophical social-duty underpinnings of tort law. The action sounds in contract, and our task is to interpret the parties' agreement."). Because the parties have chosen a specific formulation of causation that differs from the general understanding of causation, the Court proceeds to define and apply this definition in light of the ordinary-sense definition of their chosen language.

As Plaintiffs point out, the loss directly and immediately caused by the root was the damage to the pipes through which the roots grew. This would fit within the exclusion State Farm invoked when denying coverage.

Because it appears that Fredrics was an expert "retained or specially employed to provide expert testimony in the case" under Rule 26(a)(2)(B), Plaintiffs should have provided an expert report or sought the Court's leave to forego this requirement prior to using Fredrics's testimony to support their motion.